UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

THE SILVERFERN GROUP, INC.,

          Plaintiff,

v.

ePALS CLASSROOM EXCHANGE, INC.,

          Defendant.

------------------------------------------------------X

ECF CASE

CIVIL ACTION NO. 06-CV-15404 (LBS)

**COMPLAINT**

Plaintiff, The Silverfern Group, Inc. ("Silverfern"), by and through its attorneys, Tofel & Partners, LLP, as and for its Complaint against the above-named defendant, respectfully alleges as follows:

1. This is an action for breach of a written contract, a true copy of which is annexed hereto as Exhibit "A", and to collect unpaid fees and expenses due thereunder, as set forth in the invoice, a true copy of which is annexed hereto Exhibit "B", in the principal amount of $554,887.77, plus attorneys' fees and expenses compensable under the contract.

**JURISDICTION AND VENUE**

2. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1332(a)(2); there is complete diversity of citizenship between the parties. The amount in controversy herein exceeds the sum of $75,000, exclusive of interests and costs.

3. Pursuant to 28 U.S.C. §1391(a)(2), venue is proper in this District as a substantial part of the events giving rise to the causes of action occurred

within this District and plaintiff resides in this District. Furthermore, the parties agreed, in the written contract between them, to the jurisdiction and venue of the Court concerning any dispute between them concerning such agreement.

## THE PARTIES

4. At all relevant times herein mentioned, Silverfern was and still is a corporation duly created, organized and existing under and by virtue of the laws of the State of New York which maintains its principal place of business in the City, County and State of New York. Silverfern was and is engaged in the business of providing advisory and investment banking services.

5. Upon information and belief, ePALS Classroom Exchange, Inc. ("ePALS") the corporate headquarters and principal place of business of which is located in Easton, Connecticut, is a Delaware corporation and the successor-by-merger to ePALS Classroom Exchange, Inc., a Delaware corporation, and the wholly owned subsidiary of In2Books, Inc. ("In2Books"), I-EP Acquisition Corp.; both In2Books and its merger subsidiary were and, upon information and belief, are Delaware corporations. A copy of the December 15, 2006 Certificate of Merger of said corporations is annexed hereto as Exhibit "C".

6. On or about January 4, 2005, Silverfern and ePALS entered into a written agreement (the "Agreement") a true copy of which is annexed hereto as Exhibit "A".

7. The Agreement provided, *inter alia*, for Silverfern to provide certain advisory and investment banking services with respect to ePALS' exploration of

strategic alternatives and for ePALS to pay fees and expenses to Silverfern in accordance with the terms thereof.

8. Silverfern performed all of the duties and obligations on its part to be performed under and pursuant to the Agreement to facilitate a Transaction (as defined in the Agreement) and to cause it to occur.

9. Specifically, and without limiting the foregoing, in accordance with the terms of the Agreement (particularly section 1 thereof) Silverfern did familiarize itself with ePALS and its business; and did advise and assist ePALS in identifying candidates, and evaluating those and other potential candidates, for a potential Transaction (as defined in the Agreement). One such candidate was In2Books.

10. As a result of, *inter alia*, Silverfern's work, labor and services, ePALS and In2Books planned, negotiated and, on or about December 15, 2006, consummated the aforesaid merger as more fully set forth in Exhibit "C" hereto.

11. The fee due to Silverfern under the Agreement (section 2 thereof) was and is $600,000.00, of which a $50,000.00 retainer previously was paid by ePALS to Silverfern. Additionally, Silverfern incurred $4,887.77 in expenses properly compensable under the Agreement (section 3 thereof).

12. On or about October 23, 2006 Silverfern rendered and delivered to ePALS its invoice (Exhibit B hereto) for the total amount of $554,887.77, including the fee "due on closing", with instructions for wire transfer of said funds. ePALS received and retained that invoice without ever making any

objection thereto, other than to offer various proposals to Silverfern and others (e.g. lawyers and accountants) to reduce their fees and the costs of the Transaction.

13. Indeed, at various times prior to and during discussions of a possible merger between ePALS and In2Books, responsible personnel, officers and directors of ePALS (including Jonathan Ewert, ePALS' Chief Executive Officer, and George Ledwith, adviser to Werner Paulus, ePALS' then majority owner) assured Silverfern that its commission would be paid in full at the time of closing of the merger, as required under the Agreement (Section 2(d) thereof).

14. Notwithstanding closing of a Sale (as defined in the Agreement) on or about December 15, 2006, ePALS has failed and refused to pay to Silverfern its commissions, fees and expenses rightfully and legitimately due and payable under and pursuant to the Agreement.

15. ePALS agreed as a material term of the Agreement to reimburse (Agreement, section 3) and to indemnify (Agreement, section 8) Silverfern for all costs and expenses, including attorneys fees and expenses, incurred by Silverfern arising out of or related to any Transaction or Silverfern's engagement under the Agreement.

16. By reason of defendant's breach of the Agreement as aforesaid, Silverfern has incurred and will incur attorneys fees and expenses compensable under sections 3 and 8 of the Agreement, including but not limited to Silverfern's attorneys fees and expenses incurred in and in

connection with this action. Defendant is liable to plaintiff for all such costs and expenses and entitled to judgment therefor.

## AS AND FOR A FIRST CAUSE OF ACTION

17. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1-16 hereof as if fully set forth herein at length.

18. By reason of the foregoing, ePALS has breached its agreement with, and is liable to, Silverfern for the principal sum of $554,887.77, plus its attorneys' fees and expenses as aforesaid.

## AS AND FOR A SECOND CAUSE OF ACTION

19. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1-16 and 18 hereof as if fully set forth herein at length.

20. Silverfern has made and delivered its statement to ePALS of ePALS' account with Silverfern, stating ePALS' debt to Silverfern of the principal sum of $554,887.77, and ePAL has retained such statements without objection thereto.

21. By reason of the foregoing, ePALS is liable to Silverfern in the principal amount of $554,887.77.

WHEREFORE, Silverfern demands judgment as follows:

(i)   on its first and second causes of action, damages against defendant ePAL Classroom Exchange, Inc., in the principal amount of $554,887.77, together with interest thereon according to law;

(ii) an award to Silverfern of its attorneys fees and costs incurred herein and which it will incur hereafter in collecting sums due; and

(iii) such other and further relief as the Court may deem just and proper.

Dated: New York, NY
December 22, 2006

TOFEL & PARTNERS, LLP

By: _____
Lawrence E. Tofel (LET-8631)
800 Third Avenue, 12th Floor
New York, NY 10022
(212) 752-0007

*Attorneys for Plaintiff*

# EXHIBIT "A"

**THE SILVERFERN GROUP, INC.**

NEW YORK·LONDON

MERGERS AND ACQUISITIONS

MEMBER NASD

January 4, 2005

Mr. Jonathan Ewert
Chief Executive Officer
ePALS Classroom Exchange, Inc.
70 Soundview Drive
Easton, CT 06612

Dear Jonathan:

This Agreement (this "**Agreement**") will confirm the basis upon which ePALS Classroom Exchange, Inc. ("**ePALS**") has engaged The Silverfern Group, Inc. ("**Silverfern**") to provide advisory and investment banking services with respect to the exploration of strategic alternatives that may lead to (i) a possible transaction, through sale, merger, joint venture or otherwise, whether effected in a single transaction or a series of related transactions, in which 40% or more of the voting power of ePALS or all or a substantial portion of its business or assets are combined with or transferred to another company (a "**Sale**"), or (ii) the provision of equity and/or debt financing to ePALS, its parent and/or its subsidiaries by way of the sale of a minority interest (less than 40.0%) in ePALS, its parent and/or its subsidiaries, or the sale of debt or equity securities of ePALS, its parent and/or its subsidiaries (a "**Private Placement**", and together with a Sale, a "**Transaction**").

Section 1.  <u>Services to be Rendered</u>. Silverfern agrees to perform such of the following financial advisory and investment banking services during the term of our engagement hereunder as ePALS reasonably and specifically requests:

(a) Silverfern will familiarize itself to the extent it deems appropriate and feasible with the business, operations, financial condition and prospects of ePALS;

(b) Silverfern will assist ePALS in identifying and evaluating candidates for a potential Transaction;

(c) Silverfern, in coordination with ePALS, will prepare and implement a marketing plan and, working with the management of and assembling information provided by ePALS, prepare information describing ePALS (the "**Selling Information**") for distribution to potential candidates for a Transaction;

(d) Silverfern will, at ePALS' direction, contact potential candidates that ePALS has determined may be appropriate for a potential Transaction, and in rendering such services, Silverfern may meet with representatives of such candidates and provide such representatives with such information about ePALS as may be appropriate and acceptable to ePALS, provided such candidate has first signed a confidentiality and non-disclosure agreement satisfactory to ePALS;

Mr. Jonathan Ewert
ePALS Classroom Exchange, Inc.
January 4, 2005
Page 2

(e) Silverfern will advise and assist ePALS in considering the desirability of effecting a Transaction, and, if ePALS believes such a Transaction to be desirable, in its sole discretion, in developing and implementing a general strategy for accomplishing a Transaction;

(f) Silverfern will advise and assist senior management of ePALS in making presentations to the Board of Directors of ePALS concerning any proposed Transaction, as appropriate;

(g) Silverfern will advise and assist ePALS in the course of its negotiation of a Transaction and will participate in such negotiations as requested;

(h) if requested by ePALS, Silverfern will, working with the management of and assembling information provided by ePALS, prepare an offering memorandum describing ePALS (the "**Offering Memorandum**") for distribution to potential candidates for a Transaction; and

(i) if requested by ePALS, Silverfern will provide an opinion (in writing, if so requested) to ePALS' Board of Directors regarding the fairness to ePALS or its securityholders from a financial point of view of the consideration to be received by ePALS or its securityholders or the exchange ratio, as the case may be, in connection with the Transaction (the "**Opinion**"). The nature and scope of the investigation which Silverfern would conduct in order to be able to render the Opinion, as well as the scope, form and substance of the Opinion, will be such as Silverfern considers appropriate. If required by applicable law, the Opinion may be included in any disclosure document filed by ePALS with the Securities and Exchange Commission with respect to a proposed Transaction, provided that it is reproduced in full, and that any description of or reference to Silverfern or summary of the Opinion in the disclosure document is in a form reasonably acceptable to Silverfern and its counsel. Except as provided herein, the Opinion will not be reproduced, summarized or referred to in any public document or given to any other person without the prior written consent of Silverfern.

ePALS will furnish, and, if ePALS enters into negotiations with a counterparty regarding a possible Transaction, will request such counterparty to furnish, to Silverfern such information as Silverfern reasonably requests in connection with the performance of its services hereunder (all such information so furnished is referred to herein as the "**Information**"). ePALS understands and agrees that Silverfern, in performing its services hereunder, will use and rely upon the Information as well as publicly available information regarding ePALS and any counterparties and that Silverfern does not assume responsibility for independent verification of any information, whether publicly available or otherwise furnished to it, concerning ePALS or any counterparties, including, without limitation, any financial information, forecasts or projections, considered by Silverfern in connection with the rendering of its services. Accordingly, Silverfern shall be entitled to assume and rely upon the accuracy and completeness of all such information and is not required to conduct a physical inspection of any of the properties or assets, or to prepare or obtain any independent evaluation or appraisal of any of the assets or liabilities, of ePALS or any counterparty. With respect to any financial forecasts and projections made available to Silverfern by ePALS or any counterparty and used by Silverfern in its analysis, Silverfern shall be entitled to assume that such forecasts and projections have been reasonably prepared on bases reflecting the best currently available estimates and judgments of the management of ePALS or such counterparty, as the case may be, as to the matters covered thereby.


THE SILVERFERN GROUP

Mr. Jonathan Ewert
ePALS Classroom Exchange, Inc.
January 4, 2005
Page 3

In connection with the services described in this Section 1, ePALS authorizes Silverfern, as ePALS' representative, to transmit the non-confidential Selling Information (and/or Offering Memorandum, as applicable) to potential candidates for a Transaction. ePALS hereby acknowledges that all information contained in the Selling Information (and/or Offering Memorandum, as applicable) will be provided by or based upon information provided by ePALS or third parties, and that ePALS will be solely responsible for the contents thereof. To the extent that Selling Information (and/or Offering Memorandum, as applicable) contains ePALS proprietary or confidential information, Silverfern shall require such potential candidates to sign a confidentiality and non-disclosure agreement satisfactory to ePALS prior to receiving any proprietary or confidential Selling Information (and/or Offering Memorandum, as applicable).

Section 2.  Fees. As you know, our fees for services in connection with a client's sale or divestiture or private placement program depend on the outcome of the assignment and are designed to reflect our contribution to a major corporate objective.

ePALS shall pay Silverfern for its services hereunder a cash fee equal to:

(a) $50,000 payable as to:

  (i) $25,000 upon the execution of this Agreement; and
  (ii) $25,000 upon the 30 day anniversary of the execution of this Agreement, (the "**Retainer Fee**"); and

(b) in the event that ePALS requests, and Silverfern delivers, or advises ePALS that it will be unable to render, the Opinion, an additional cash fee of $150,000, payable upon the occurrence of such delivery or advice (the "**Opinion Fee**"); and

(c) in the event that ePALS requests that Silverfern render an additional Opinion with respect to [a] materially amended or revised offer[s], an additional Opinion Fee of $75,000, payable upon the delivery of such additional Opinion or advice from Silverfern that it will be unable to render such additional Opinion; and

(d) in the event a Sale is consummated, a cash fee, payable at the time of closing, equal to:

  (i) $600,000; plus

  (ii) 1.50% of any Aggregate Consideration (as defined below) between $30 million and $50 million; plus
  1.75% of any Aggregate Consideration realized between $50 million and $75 million; plus
  2.00% of any Aggregate Consideration realized between $75 million and $100 million; plus
  2.50% of any Aggregate Consideration realized between $100 million and $150 million; plus
  5.00% of any Aggregate Consideration realized in excess of $150 million (the "**Sale Fee**"); less

  (iii) the amount of any previously paid Opinion Fee(s) and/or Retainer Fee.



Mr. Jonathan Ewert
ePALS Classroom Exchange, Inc.
January 4, 2005
Page 4

(e) In the event that a potential candidate (the "**Private Placement Candidate**") for a Transaction shall advise either party hereto of its desire to pursue a Private Placement, the party hereto so advised shall immediately inform the other party hereto of such fact, following which advice ePALS shall have five (5) business days to (i) request Silverfern in writing to advise it on such potential Private Placement with the Private Placement Candidate, subject to the terms hereof (a "**Private Placement Advisory Request**"), or (ii) to inform Silverfern in writing of its intent to pursue such potential Private Placement with such Private Placement Candidate on its own (a "**Private Placement Termination**"), without assistance from Silverfern.

In the event ePALS submits a Private Placement Advisory Request within the five (5) day notice period provided in this Section 2 (e), and ePALS and/or its subsidiaries completes a Private Placement with the Private Placement Candidate, ePALS shall pay Silverfern for its services hereunder a cash fee payable at the time of closing, equal to five percent (5.0%) of the Aggregate Consideration (as defined below) raised in the form of equity, debt and any other valuable consideration in such Private Placement, but in no event less than $250,000 (the "**Private Placement Fee**"); provided that the Private Placement Fee shall be reduced by the amount of any previously paid Retainer Fee.

In the event ePALS submits a Private Placement Termination or does not submit a written Private Placement Advisory Request within the five (5) day notice period provided in this Section 2 (e), Silverfern shall be relieved of its obligations to advise ePALS on such Private Placement with such Private Placement Candidate pursuant to the terms hereof, and shall not provide any of the services as set out in Section 1 above in relation thereto. It is understood between the parties hereto that in such event, Silverfern shall not be entitled to a Private Placement Fee, and a Transaction shall not be deemed to have occurred, with respect to a Private Placement with such Private Placement Candidate.

Additionally, Silverfern acknowledges that it shall not be entitled to a Private Placement Fee, and a Transaction shall not be deemed to have occurred, with respect to any Aggregate Consideration (as defined below) raised in the form of equity, debt and any other valuable consideration in such Private Placement by or from the existing shareholders of ePALS and/or their affiliates, as listed on Appendix A to this Agreement.

For purposes of this Agreement, the term "**Aggregate Consideration**" shall mean the total amount of cash and the fair market value on the date which is five days prior to the consummation of the Transaction (the "**Valuation Date**") of all other property paid or payable directly or indirectly to ePALS or any of its securityholders in connection with a Transaction (including (i) amounts paid to holders of any warrants or convertible securities of ePALS and to holders of any options or stock appreciation rights issued by ePALS, whether or not vested; (ii) the total amount of indebtedness for borrowed money or similar non-trade liabilities or obligations (including unfunded pension liabilities, guarantees, capitalized leases and the like) of ePALS repaid, retired, extinguished or assumed in connection with, or which otherwise remains outstanding as of the closing of, a Transaction; (iii) the fair market value of any assets of ePALS which are retained by or otherwise distributed to its stockholders or affiliates in anticipation of or in connection with a Transaction); and (iv) the present value of payments to be made under any non-compete, earn-out, consulting or other similar agreements entered into in connection with a Transaction, provided, that the portion of any amounts payable under such agreements that is attributable to the provision of services to be provided, as reasonably determined in good faith by Silverfern and ePALS based on amounts


THE SILVERFERN GROUP

Mr. Jonathan Ewert
ePALS Classroom Exchange, Inc.
January 4, 2005
Page 5

customarily paid to persons or entities holding similar positions or providing similar services, shall be excluded from Aggregate Consideration). Aggregate Consideration shall also be deemed to include, in the case of a joint venture, the total amount of cash and the fair market value on the Valuation Date of all other property contributed by the other party to ePALS or to the joint venture.

For purposes of calculating Sale Aggregate Consideration, all shares will be deemed transferred where a Transaction is effected by the transfer of shares (A) constituting 40% or more of the then outstanding equity securities of or equity interest in ePALS or its subsidiaries or affiliates, or (B) possessing 40% or more of the then outstanding voting power of the outstanding equity securities of or equity interest in ePALS or its subsidiaries or affiliates.

For purposes of calculating Transaction Aggregate Consideration, the value of any securities issuable in connection with a Transaction (whether debt or equity) that have an established public market (including any such securities subject to resale restrictions) will be determined on the basis of the last closing price in such market on the Valuation Date; and the value of securities that have no established public market or other property will be the fair market value of such securities or other property on such Valuation Date as determined in good faith and upon mutual agreement of ePALS and Silverfern, and (iii) all present value calculations will utilize a discount rate equal to the prime rate published in *The Wall Street Journal* on the Valuation Date (the "Prime Rate"). In the event an agreement for a Transaction provides for escrowed or contingent payments or other payments over time, such payments shall be deemed to be "Aggregate Consideration" when paid directly or indirectly to ePALS or any of its security holders, and ePALS shall be required to pay Silverfern's Sale Fee and/or Private Placement Fee (as calculated pursuant to this Section 2) upon such payments only as such payments are actually received by ePALS or such security holders.

No fee or other payment made to any third party in relation to the services to be rendered by Silverfern under the terms of this Agreement or otherwise shall reduce or eliminate the fees payable to Silverfern as outlined under this Section 2.

Notwithstanding the above, Silverfern's advisory efforts pursuant to this Agreement will continue after control is obtained to assist you with a second step merger or similar transaction.

Section 3. Expenses. In addition to any fees that may be payable to Silverfern hereunder and regardless of whether any Transaction is proposed or consummated, ePALS hereby agrees, monthly upon request, to reimburse Silverfern for all reasonable fees and disbursements of Silverfern's counsel and all of Silverfern's reasonable travel and other out-of-pocket expenses incurred in connection with any actual or proposed Transaction or otherwise arising out of Silverfern's engagement hereunder; provided that, except as otherwise contemplated by Section 8 below, legal fees (other than in connection with Silverfern's rendering of the Opinion in the event Silverfern is requested to render same in accordance with Section 1 (i) above) will require the prior written consent of ePALS, and expenses in excess of $2,000 will require the prior consent of ePALS.

Section 4. Termination of Engagement. Silverfern's engagement hereunder may be terminated by either ePALS or Silverfern at any time, with or without cause, upon written advice to that effect to the other party; provided, however, that


THE SILVERFERN GROUP

Mr. Jonathan Ewert
ePALS Classroom Exchange, Inc.
January 4, 2005
Page 6

(a) Silverfern will be entitled to its full fee as outlined in Section 2 hereof in the event that (i) at any time prior to the expiration of 12 months after such termination by ePALS, a Transaction is consummated; or (ii) ePALS enters into a definitive agreement during the term of this Agreement or during such 12 month period which results in a Transaction; and

(b) the provisions of this Section 4 and of Sections 3, 7, 8 and 11 hereof shall survive such termination.

Section 5. Reliance on Others. ePALS confirms that it will rely on its own counsel, accountants and other similar expert advisors for legal, accounting, tax and other similar advice.

Section 6. Publicity. In the event of consummation of any Transaction, Silverfern shall have the right, at its own expense, to disclose its participation in such Transaction, including, without limitation, the placement of "tombstone" advertisements in financial and other newspapers and journals, subject to ePALS' prior approval of the contents of such disclosure(s), which approval shall not be unreasonably withheld. Silverfern agrees that ePALS shall have the right to announce publicly the execution of this Agreement with Silverfern subject to Silverfern's prior approval of the contents of such announcement.

Section 7. Scope of Responsibility. Neither Silverfern nor any of its affiliates (nor any of their respective control persons, directors, officers, employees or agents) shall be liable to ePALS or to any other person claiming through ePALS for any claim, loss, damage, liability, cost or expense suffered by ePALS or any such other person arising out of or related to Silverfern's engagement hereunder except for a claim, loss or expense that arises primarily out of or is based primarily upon any action or failure to act by Silverfern, other than an action or failure to act undertaken at the request or with the consent of ePALS, that is found in a final judicial determination (or a settlement tantamount thereto) to constitute bad faith, willful misconduct or gross negligence on the part of Silverfern.

Section 8. Indemnity and Contribution. ePALS agrees to indemnify and hold harmless Silverfern and its affiliates (and their respective control persons, directors, officers, employees and agents) to the full extent lawful against any and all claims, losses, damages, liabilities, costs and expenses as incurred (including all reasonable fees and disbursements of counsel and all reasonable travel and other out-of-pocket expenses incurred in connection with investigation of, preparation for and defense of any pending or threatened claim and any litigation or other proceeding arising therefrom, whether or not in connection with pending or threatened litigation in which Silverfern or any other indemnified person is a party) arising out of or related to any actual or proposed Transaction or Silverfern's engagement hereunder; provided, however, there shall be excluded from such indemnification any such claims, losses, damages, liabilities, costs or expenses that arise primarily out of or are based primarily upon any action or failure to act by Silverfern, other than an action or failure to act undertaken at the request or with the consent of ePALS, that is found in a final judicial determination (or a settlement tantamount thereto) to constitute bad faith, willful misconduct or gross negligence on the part of Silverfern. In the event that the foregoing indemnity is unavailable or insufficient to hold Silverfern and other indemnified parties harmless, then ePALS shall contribute to amounts paid or payable by Silverfern and other indemnified parties in respect of such claims, losses, damages, liabilities, costs and expenses in such proportion as appropriately reflects the relative benefits received by, and, if applicable law does not permit allocation solely on the basis of benefits, fault of, ePALS and Silverfern in



Mr. Jonathan Ewert
ePALS Classroom Exchange, Inc.
January 4, 2005
Page 7

connection with the matters as to which such claims, losses, damages, liabilities, costs and expenses relate and other equitable considerations, subject to the limitation that in any event Silverfern's aggregate contributions in respect of such claims, losses, damages, liabilities, costs and expenses will not exceed the amount of fees actually received by Silverfern pursuant to this Agreement. For purposes hereof, relative benefits to ePALS and Silverfern of the Transaction shall be deemed to be in the same proportion that the total value received or contemplated to be received by ePALS and/or its security holders in connection with the Transaction bears to the fees paid to Silverfern pursuant to its engagement in respect of such Transaction.

Silverfern agrees to indemnify and hold harmless ePALS and its affiliates (and their respective control persons, directors, officers, employees and agents) to the full extent lawful against any and all claims, losses, damages, liabilities, costs or expenses that arise primarily out of or are based primarily upon any action or failure to act by Silverfern, other than an action or failure to act undertaken at the request or with the consent of ePALS, that is found in a final judicial determination (or a settlement tantamount thereto) to constitute bad faith, willful misconduct or gross negligence on the part of Silverfern subject to the limitation that in any event Silverfern's aggregate contributions in respect of such claims, losses, damages, liabilities, costs and expenses will not exceed the amount of fees actually received by Silverfern pursuant to this Agreement.

Neither party will, without the prior written consent of the other party, settle any litigation relating to Silverfern's engagement hereunder wherein the other party is a named defendant unless such settlement includes an express, complete and unconditional release of such other party and its affiliates (and their respective control persons, directors, officers, employees and agents) with respect to all claims asserted in such litigation or relating to Silverfern's engagement hereunder and the other party; such release to be set forth in an instrument signed by all parties to such settlement.

Section 9. Governing Law; Jurisdiction. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to the conflicts of laws provisions thereof. Any right to trial by jury with respect to any claim, action, suit or proceeding arising out of this Agreement or any of the matters contemplated hereby is waived. EPALS and Silverfern each hereby submits to the non-exclusive jurisdiction of the Federal and State courts located in the County of New York, New York in connection with any dispute related to this Agreement or any of the matters contemplated hereby.

Section 10. No Rights in Shareholders, etc. ePALS recognizes that Silverfern has been engaged only by ePALS, and that ePALS' engagement of Silverfern is not deemed to be on behalf of and is not intended to confer rights upon any shareholder, partner or other owner of ePALS or any other person not a party hereto as against Silverfern or any of its affiliates or any of their respective directors, officers, agents, employees or representatives. Unless otherwise expressly agreed, no one other than ePALS is authorized to rely upon ePALS' engagement of Silverfern or any statements, advice, opinions or conduct by Silverfern, and ePALS will not disclose such statements, advice, opinions or conduct to others (except ePALS' professional advisors and except as required by law). Without limiting the foregoing, any opinions or advice rendered to ePALS' Board of Directors or management in the course of ePALS' engagement of Silverfern are for the purpose of assisting the Board or management, as the case may be, in evaluating the Transaction and do not constitute a recommendation to any shareholder of ePALS concerning action that such shareholder might or should take in connection with the Transaction. Silverfern's role herein is that of an independent contractor;



Mr. Jonathan Ewert
ePALS Classroom Exchange, Inc.
January 4, 2005
Page 8

    nothing herein is intended to create or shall be construed as creating a fiduciary relationship between ePALS and Silverfern.

Section 11. <u>Disclosure</u>. ePALS acknowledges that Silverfern and its affiliates may have and may continue to have investment banking, financial advisory and other relationships with parties other than ePALS pursuant to which Silverfern may acquire information of interest to ePALS. Silverfern shall have no obligation to disclose such information to ePALS or to use such information in the preparation of the Opinion.

Section 12. <u>Miscellaneous</u>. In order to coordinate most effectively the activities of ePALS and Silverfern contemplated by this Agreement, both ePALS (including management or other officers and directors of ePALS) and Silverfern will promptly inform the other of inquiries of third parties which it receives concerning a Transaction. Nothing in this Agreement is intended to obligate or commit Silverfern or any of its affiliates to provide any services other than as set out above. This Agreement may be executed in two or more counterparts, all of which together shall be considered a single instrument. This Agreement constitutes the entire agreement, and supersedes all prior agreements and understandings (both written and oral) of the parties hereto with respect to the subject matter hereof, and cannot be amended or otherwise modified except in writing executed by the parties hereto. The provisions hereof shall inure to the benefit of and be binding upon the successors and assigns of ePALS and Silverfern.

[this space intentionally left blank -- signatures appear on page following]



Mr. Jonathan Ewert
ePALS Classroom Exchange, Inc.
January 4, 2005
Page 9

If you are in agreement with the foregoing, please sign and return the attached copy of this Agreement, whereupon this Agreement shall become effective as of the date hereof.

We look forward to working with ePALS Classroom Exchange, Inc. on this important assignment.

Very truly yours,

THE SILVERFERN GROUP, INC.

By: _____
Clive R. Holmes
Chairman & CEO

By: _____
John R. Cattau
Principal

Accepted:

ePALS Classroom Exchange, Inc.

By: _____  2/7/05
Name: _____JONATHAN EWERT_____
Title: _____CEO_____



Mr. Jonathan Ewert
ePALS Classroom Exchange, Inc.
January 4, 2005
Page 10

**Appendix A**

List of Shareholders in ePALS Classroom Exchange, Inc. as of January 4, 2005

**Shareholder Name**

103-7 LLC
Abiscott, Josh
Arbeznik, John C.
Avnet, Mark
Bateman, Erik (NK Inc.)
Beacon Technology Network
Berman, Michael
Bodenheimer, George W.
Braman, Mark A.
Bronzino, Joseph
Burbank, R. Michael & Cindy A. Roberts
Burchill, Thomas F.
Cantor, Paul & Chieko Takeuchi-Cantor
Carpenter, Paul
Chelliah, Cooma
Chmiel, Robert
Dell, Andrew P.
Dell, Christopher M.
Dell, Douglas
Dell, Emily K.
DeRosa, Paul
Di Scipio Enterprises, LLC
Di Scipio, Alicia C. (Custodial)
Di Scipio, Christin A. (Custodial)
Di Scipio, Christine
Di Scipio, Kathleen B. (Custodial)
Di Scipio, R. Michael
Di Scipio, Robert M.
Di Scipio, William M. (Custodial)
Easton Media Group, LLC (Tim Di Scipio)
Elias, Carolyn
Ewert, Jonathan & Lee Jackson
Farah, John
Ferrara, Jennifer
Fleishon, Joseph (NK Inc.)
Fornari, James
Fornari, Matthew
Four Star Financial Services, LLC
Glassberg, Richard
Glavin, William
Gould, Richard
Gourgon, Richard R.

**Shareholder Name**

Green, Richard Jr. & Karen M.
Guerra, Marianna
Hawkins, Kent
Heinsch, Richard L. & Joann
Horn, Jeff
Horn, Kenneth
Irving, George A.
Irving, James F. & Beverly Girvin
Irving, John
James, Amanda
K. Francis Lee, M.D., M.P.H., F.A.C.S
Kaun, Karen
Knollwood Investments, LLC (William Glavin)
Lemieux, Jacques
Marsden, Sean
Maurin, Jean-Claude
McDonald, Edward T.
McDonald, Edward T., Jr. & Teresa J.
Meager, Kent M. & Elizabeth A.
Miller, Barbara A.
Miller, Joseph (Joel) H. III
Mogull, Dean
Murphy, Kevin L.
Nicholson, Peter
O'Brien, Cornelius (Neal) & Dorothy
O'Mara, Edwin J.
O'Mara, Megan M.
O'Mara, Shannon F.
Padilla Bay, LLC
Paulus, Werner K.
Persky, Steven D.
Redman, William E.
Roscoe, David
Russo, Nick
DiScipio, Lauren
Sauerteig, B. Lance
Savvidis, Nikolaos
Schettino, Joseph
Schwarz, Dirk C.
Smith, Bruce P.
Sodokoff, Lawrence (Larry)
Stover, Matthew J. (Mat)

**Shareholder Name**

Tabah, Joseph & Annie L.
Tabah, Marc
Todd, Ellin
Tuthill, Howard S.
Tuthill, Howard S. (Terry), III
Uesugi Management and Advisory Services
Weiske, Eilert & Beatrice
Willbrand, Daniel C.
Willbrand, David J.
Willbrand, Jeffrey W.
Willbrand, Micah A.
Yip, Matthew



# EXHIBIT "B"

 

# Invoice

| Date | Invoice # |
|---|---|
| 10/23/2006 | OCT 06 5 |

Bill To:
Mr. Jonathan Ewert
Chief Executive Officer
ePALS Classroom Exchange, Inc.
70 Soundview Drive
Easton, CT 06612

| Description | Amount |
|---|---|
| SUCCESS FEE ACCORDING TO THE TERMS OF OUR ENGAGEMENT LETTER DATED JANUARY 27, 2005 | $600,000.00 |
| LESS: RETAINER FEE PREVIOUSLY PAID | ($50,000.00) |
| DUE ON CLOSING | 550,000.00 |
| REIMBURSABLE EXPENSES PREVIOUSLY BILLED AND OUTSTANDING | |
| - AUGUST 31, 2006 | 2,067.19 |
| - JULY 31, 2006 | 2,434.64 |
| - FEBRUARY 28, 2006 | 126.86 |
| - MARCH 31, 2005 | 259.08 |
| TOTAL REIMBURSABLE EXPENSES | 4,887.77 |
| PLEASE WIRE FUNDS DIRECTLY TO CITIBANK, N.A. UNDER THE FOLLOWING INFORMATION: | |
| CITIBANK, N.A. | |
| ABA 021 0000 89 | |
| CHECKING ACCOUNT NUMBER 7842 2318 – THE SILVERFERN GROUP, INC. | |
| CITIBANK, N.A. BR #587 | |
| 399 PARK AVENUE | |
| NEW YORK, NY 10043 | |
| PHONE: 212-559-7716 | |
| FAX: 212-355-7427 | |

**TOTAL** $554,887.77

150 East 52nd Street · New York · NY 10022 · Telephone: +1 212 · 209 8860 · Fax: +1 212 · 209 8861