UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------X

THE SILVERFERN GROUP, INC.,      :     CIVIL ACTION NO.
                                           :     06CV15404

            Plaintiff,        :

                                     :

         v.                    :     **NOTICE OF MOTION**

                                     :

ePALS CLASSROOM EXCHANGE,      :
INC.,                               :

                                   :

            Defendant.     :

-----------------------------------------------------X

PLEASE TAKE NOTICE, that upon the annexed affidavit of Clive Holmes, sworn to on February 15, 2007, the exhibits annexed thereto, the affidavit of Lawrence E. Tofel, Esq., sworn to on February 15, 2007, the exhibits annexed thereto, the accompanying memorandum of law, plaintiff's statement pursuant to Local Rule 56.1 of material facts as to which there is no genuine dispute, and all prior proceedings had herein, plaintiff The Silverfern Group, Inc. ("Silverfern") will move this Court before the Honorable Leonard Sand, in Courtroom 1650, United States Courthouse, 500 Pearl Street, New York, NY on a date to be determined by the Court, for an Order, pursuant to Rules 12(c) and 56 of the Federal Rules of Civil Procedure, for judgment on the pleadings or, in the alternative, summary judgment in favor of Silverfern and against defendant ePALS Classroom Exchange, Inc.

PLEASE TAKE FURTHER NOTICE, that pursuant to Rule 6.1(b) of the Local Rules of the United States District Court for the Southern District of New York, any opposing affidavits and answering memoranda shall be served within

{00023794.}

ten business days after service of the moving papers, and any reply affidavits and memorandum of law shall be served within five business days after service of the answering papers.

Dated:      New York, NY
            February 15, 2007

                              TOFEL & PARTNERS, LLP

                              By:_____
                                 Lawrence E. Tofel
                              800 Third Avenue, 12th Floor
                              New York, NY  10022
                              (212) 752-0007

                              *Attorneys for Plaintiff*

To:     Maxine Sleeper, Esq.
        Cooley Godward Kronish LLP
        1114 Avenue of the Americas
        New York, NY  10036

        *Attorneys for Defendant*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------X

THE SILVERFERN GROUP, INC.,       :     CIVIL ACTION NO.
                                            :     06CV15404
                Plaintiff,     :
                                            :
          v.                     :     **AFFIDAVIT**
                                            :

ePALS CLASSROOM EXCHANGE,     :
INC.,                                   :
                                          :
             Defendant.     :

-----------------------------------------------------X

STATE OF NEW YORK  )
                    )    ss.:
COUNTY OF NEW YORK)

       CLIVE HOLMES, being duly sworn, deposes and says:

       1.    I am the Chairman and Chief Executive Officer of The Silverfern Group, Inc. ("Silverfern"), the plaintiff herein. I have personal knowledge of the facts set forth herein and submit this affidavit in support of Silverfern's motion for judgment on the pleadings, or in the alternative for summary judgment.

       2.    Silverfern has been required to sue in order to recover the fees and reimbursement of costs due to it under and pursuant to its written agreement with its client, defendant ePALS Classroom Exchange, Inc. ("ePALS"). A fee of $550,000 is due Silverfern under that agreement. Upon information and belief ePALS has asserted defenses and counterclaims which should be dismissed and disallowed as a matter of law, and judgment in Silverfern's favor and against ePALS expeditiously entered.

3.    On or about January 4, 2005, Silverfern and ePALS entered into a written agreement (the "Agreement"), a true copy of which is annexed hereto as Exhibit "A".

4.    Pursuant to the Agreement, ePALS retained Silverfern to provide certain advisory and investment banking services with respect to ePALS' exploration of strategic alternatives.  Under the Agreement, ePALS agreed to pay certain negotiated fees to Silverfern, and to reimburse Silverfern's expenses in accordance with the terms thereof in the event of a "Sale" (as defined in the Agreement.)

5.    In accordance with the terms of the Agreement (particularly section 1 thereof), Silverfern familiarized itself with ePALS and its business and advised and assisted ePALS in identifying candidates, and evaluating those and other potential candidates, for a potential Transaction (as that term was defined in the Agreement).  One such candidate was In2Books, Inc. ("In2Books").

6.    As a result of, *inter alia*, Silverfern's work, labor and services, ePALS and In2Books planned, negotiated and, on or about December 15, 2006, consummated a merger as more fully set forth in a December 15, 2006 Certificate of Merger, Exhibit "B" hereto.

7.    In anticipation of the expected closing of the ePALS merger, on or about October 23, 2006 Silverfern rendered and delivered to ePALS its invoice (Exhibit "C" hereto) for the total amount of $554,887.77, including the fee "due on closing" and $4,887.77 of expenses Silverfern had incurred on ePALS' behalf, with instructions for wire transfer of said funds at closing.

8.    ePALS received and retained that invoice without ever making any objection thereto.  As closing approached, ePALS did express concerns to Silverfern over the magnitude of the closing costs and requested from Silverfern and others (e.g. the lawyers and accountants involved in the transactions) that their respective fees and the costs of the Transaction be voluntarily reduced. No agreement was reached, despite Silverfern's efforts and willingness to explore such accommodations.  Indeed, it is noteworthy that in the written correspondence between and among Silverfern, ePALS, and In2Books prior to the closing (Exhibit "D", "E", "F", "G" and "H" hereto), In2Books and ePALS requested Silverfern to lower its fee and discussed who would be paying the fee and by what means – but they never stated or even suggested that Silverfern was not entitled to or had not earned that fee, or that Silverfern had failed to perform any obligation it had under the Agreement.  At no time during these discussions, and at no time prior to the filing of Silverfern's complaint herein, did ePALS (or anyone on its behalf) claim, assert or otherwise raise with Silverfern any problem with or criticism of Silverfern's performance of its obligations under the Agreement.  In no way did ePALS register or voice any such complaints or criticisms – not in writing, not orally, nor in any other way – prior to the December 15 closing.

9.    Neither party to the Agreement ever invoked the "termination" provisions contained in Section 4 thereof, and the Agreement remained in force.

10.    Notwithstanding the requests for voluntary fee reduction, at various times during discussions prior to closing of the ePALS/In2Books merger, responsible personnel, officers and directors of ePALS (including Jonathan Ewert, ePALS' Chief Executive Officer, and George Ledwith, adviser to Werner Paulus, ePALS' then majority owner) assured Silverfern that its fees (and expense reimbursement) would be paid in full at the time of closing of the merger, as required under the Agreement (section 2(d) thereof).

11.    In fact, in his December 1, 2006 letter to me, Mr. Jonathan Ewert, ePals chief executive officer, specifically acknowledged the obligation to Silverfern (listed on the attachment), and even "certif[ied] that" the amounts listed on the attachment were "factually correct as of the date of this letter" (Exhibit "G").  Notably, Mr. Ewert's letter did not mention any of the breaches or failures to perform (all of them pre-dating the December 1 letter) that ePALS now alleges in its pleading.

12.    Notwithstanding the foregoing, ePALS has failed and refused to pay to Silverfern its commissions, fees and expenses rightfully and legitimately due and payable under and pursuant to the Agreement.[1]

13.    Thus, in accordance with the principles discussed in Silverfern's Memorandum of Law submitted herewith, ePALS has waived, or should be

---

[1] As a material term of the Agreement, ePALS agreed to reimburse (Agreement, section 3) and to indemnify (Agreement, section 8) Silverfern for all costs and expenses, including attorneys fees and expenses, incurred by Silverfern arising out of or related to any Transaction or Silverfern's engagement under the Agreement.  By reason of ePALS' breach of the Agreement as aforesaid, Silverfern has incurred and will incur attorneys fees and expenses compensable under sections 3 and 8 of the Agreement, including but not limited to Silverfern's attorneys fees and expenses incurred in and in connection with this action.  ePALS is liable to Silverfern for all such costs and expenses and entitled to judgment therefor.

deemed to have waived, any defenses or counterclaims such as those asserted in its answer herein (none of which have any *bona fide* factual basis or merit in any event), and judgment in Silverfern's favor should be expediously entered.

_____
Clive Holmes

Sworn to before me this
15th day of February, 2007

_____
Notary Public

CHRISTINE GARDNER
Notary Public, State of New York
No. 01GA6148369
Qualified in Bronx County
Commission Expires June 26, 2010

# EXHIBIT "A"

# THE SILVERFERN GROUP, INC.

NEW YORK · LONDON

MERGERS AND ACQUISITIONS

MEMBER NASD

January 4, 2005

Mr. Jonathan Ewert
Chief Executive Officer
ePALS Classroom Exchange, Inc.
70 Soundview Drive
Easton, CT 06612

Dear Jonathan:

This Agreement (this "Agreement") will confirm the basis upon which ePALS Classroom Exchange, Inc. ("ePALS") has engaged The Silverfern Group, Inc. ("Silverfern") to provide advisory and investment banking services with respect to the exploration of strategic alternatives that may lead to (i) a possible transaction, through sale, merger, joint venture or otherwise, whether effected in a single transaction or a series of related transactions, in which 40% or more of the voting power of ePALS or all or a substantial portion of its business or assets are combined with or transferred to another company (a "Sale"), or (ii) the provision of equity and/or debt financing to ePALS, its parent and/or its subsidiaries by way of the sale of a minority interest (less than 40.0%) in ePALS, its parent and/or its subsidiaries, or the sale of debt or equity securities of ePALS, its parent and/or its subsidiaries (a "Private Placement", and together with a Sale, a "Transaction").

Section 1.   Services to be Rendered. Silverfern agrees to perform such of the following financial advisory and investment banking services during the term of our engagement hereunder as ePALS reasonably and specifically requests:

(a) Silverfern will familiarize itself to the extent it deems appropriate and feasible with the business, operations, financial condition and prospects of ePALS;

(b) Silverfern will assist ePALS in identifying and evaluating candidates for a potential Transaction;

(c) Silverfern, in coordination with ePALS, will prepare and implement a marketing plan and, working with the management of and assembling information provided by ePALS, prepare information describing ePALS (the "Selling Information") for distribution to potential candidates for a Transaction;

(d) Silverfern will, at ePALS' direction, contact potential candidates that ePALS has determined may be appropriate for a potential Transaction, and in rendering such services, Silverfern may meet with representatives of such candidates and provide such representatives with such information about ePALS as may be appropriate and acceptable to ePALS, provided such candidate has first signed a confidentiality and non-disclosure agreement satisfactory to ePALS;

Mr. Jonathan Ewert
ePALS Classroom Exchange, Inc.
January 4, 2005
Page 2

   (e) Silverfern will advise and assist ePALS in considering the desirability of effecting a Transaction, and, if ePALS believes such a Transaction to be desirable, in its sole discretion, in developing and implementing a general strategy for accomplishing a Transaction;

   (f) Silverfern will advise and assist senior management of ePALS in making presentations to the Board of Directors of ePALS concerning any proposed Transaction, as appropriate;

   (g) Silverfern will advise and assist ePALS in the course of its negotiation of a Transaction and will participate in such negotiations as requested;

   (h) if requested by ePALS, Silverfern will, working with the management of and assembling information provided by ePALS, prepare an offering memorandum describing ePALS (the "**Offering Memorandum**") for distribution to potential candidates for a Transaction; and

   (i) if requested by ePALS, Silverfern will provide an opinion (in writing, if so requested) to ePALS' Board of Directors regarding the fairness to ePALS or its securityholders from a financial point of view of the consideration to be received by ePALS or its securityholders or the exchange ratio, as the case may be, in connection with the Transaction (the "**Opinion**"). The nature and scope of the investigation which Silverfern would conduct in order to be able to render the Opinion, as well as the scope, form and substance of the Opinion, will be such as Silverfern considers appropriate. If required by applicable law, the Opinion may be included in any disclosure document filed by ePALS with the Securities and Exchange Commission with respect to a proposed Transaction, <u>provided</u> that it is reproduced in full, and that any description of or reference to Silverfern or summary of the Opinion in the disclosure document is in a form reasonably acceptable to Silverfern and its counsel. Except as provided herein, the Opinion will not be reproduced, summarized or referred to in any public document or given to any other person without the prior written consent of Silverfern.

ePALS will furnish, and, if ePALS enters into negotiations with a counterparty regarding a possible Transaction, will request such counterparty to furnish, to Silverfern such information as Silverfern reasonably requests in connection with the performance of its services hereunder (all such information so furnished is referred to herein as the "**Information**"). ePALS understands and agrees that Silverfern, in performing its services hereunder, will use and rely upon the Information as well as publicly available information regarding ePALS and any counterparties and that Silverfern does not assume responsibility for independent verification of any information, whether publicly available or otherwise furnished to it, concerning ePALS or any counterparties, including, without limitation, any financial information, forecasts or projections, considered by Silverfern in connection with the rendering of its services. Accordingly, Silverfern shall be entitled to assume and rely upon the accuracy and completeness of all such information and is not required to conduct a physical inspection of any of the properties or assets, or to prepare or obtain any independent evaluation or appraisal of any of the assets or liabilities, of ePALS or any counterparty. With respect to any financial forecasts and projections made available to Silverfern by ePALS or any counterparty and used by Silverfern in its analysis, Silverfern shall be entitled to assume that such forecasts and projections have been reasonably prepared on bases reflecting the best currently available estimates and judgments of the management of ePALS or such counterparty, as the case may be, as to the matters covered thereby.


THE
SILVERFERN
GROUP

Mr. Jonathan Ewert
ePALS Classroom Exchange, Inc.
January 4, 2005
Page 3

In connection with the services described in this Section 1, ePALS authorizes Silverfern, as ePALS' representative, to transmit the non-confidential Selling Information (and/or Offering Memorandum, as applicable) to potential candidates for a Transaction. ePALS hereby acknowledges that all information contained in the Selling Information (and/or Offering Memorandum, as applicable) will be provided by or based upon information provided by ePALS or third parties, and that ePALS will be solely responsible for the contents thereof. To the extent that Selling Information (and/or Offering Memorandum, as applicable) contains ePALS proprietary or confidential information, Silverfern shall require such potential candidates to sign a confidentiality and non-disclosure agreement satisfactory to ePALS prior to receiving any proprietary or confidential Selling Information (and/or Offering Memorandum, as applicable).

Section 2.    Fees. As you know, our fees for services in connection with a client's sale or divestiture or private placement program depend on the outcome of the assignment and are designed to reflect our contribution to a major corporate objective.

ePALS shall pay Silverfern for its services hereunder a cash fee equal to:

(a) $50,000 payable as to:

    (i)     $25,000 upon the execution of this Agreement; and

    (ii)    $25,000 upon the 30 day anniversary of the execution of this Agreement, (the "**Retainer Fee**"); and

(b) in the event that ePALS requests, and Silverfern delivers, or advises ePALS that it will be unable to render, the Opinion, an additional cash fee of $150,000, payable upon the occurrence of such delivery or advice (the "**Opinion Fee**"); and

(c) in the event that ePALS requests that Silverfern render an additional Opinion with respect to [a] materially amended or revised offer[s], an additional Opinion Fee of $75,000, payable upon the delivery of such additional Opinion or advice from Silverfern that it will be unable to render such additional Opinion; and

(d) in the event a Sale is consummated, a cash fee, payable at the time of closing, equal to:

    (i)     $600,000; plus

    (ii)    1.50% of any Aggregate Consideration (as defined below) between $30 million and $50 million; plus
                 1.75% of any Aggregate Consideration realized between $50 million and $75 million; plus
                 2.00% of any Aggregate Consideration realized between $75 million and $100 million; plus
                 2.50% of any Aggregate Consideration realized between $100 million and $150 million; plus
                 5.00% of any Aggregate Consideration realized in excess of $150 million (the "**Sale Fee**"); less

    (iii)   the amount of any previously paid Opinion Fee(s) and/or Retainer Fee.



Mr. Jonathan Ewert
ePALS Classroom Exchange, Inc.
January 4, 2005
Page 4

(e) In the event that a potential candidate (the "**Private Placement Candidate**") for a Transaction shall advise either party hereto of its desire to pursue a Private Placement, the party hereto so advised shall immediately inform the other party hereto of such fact, following which advice ePALS shall have five (5) business days to (i) request Silverfern in writing to advise it on such potential Private Placement with the Private Placement Candidate, subject to the terms hereof (a "**Private Placement Advisory Request**"), or (ii) to inform Silverfern in writing of its intent to pursue such potential Private Placement with such Private Placement Candidate on its own (a "**Private Placement Termination**"), without assistance from Silverfern.

In the event ePALS submits a Private Placement Advisory Request within the five (5) day notice period provided in this Section 2 (e), and ePALS and/or its subsidiaries completes a Private Placement with the Private Placement Candidate, ePALS shall pay Silverfern for its services hereunder a cash fee payable at the time of closing, equal to five percent (5.0%) of the Aggregate Consideration (as defined below) raised in the form of equity, debt and any other valuable consideration in such Private Placement, but in no event less than $250,000 (the "**Private Placement Fee**"); provided that the Private Placement Fee shall be reduced by the amount of any previously paid Retainer Fee.

In the event ePALS submits a Private Placement Termination or does not submit a written Private Placement Advisory Request within the five (5) day notice period provided in this Section 2 (e), Silverfern shall be relieved of its obligations to advise ePALS on such Private Placement with such Private Placement Candidate pursuant to the terms hereof, and shall not provide any of the services as set out in Section 1 above in relation thereto. It is understood between the parties hereto that in such event, Silverfern shall not be entitled to a Private Placement Fee, and a Transaction shall not be deemed to have occurred, with respect to a Private Placement with such Private Placement Candidate.

Additionally, Silverfern acknowledges that it shall not be entitled to a Private Placement Fee, and a Transaction shall not be deemed to have occurred, with respect to any Aggregate Consideration (as defined below) raised in the form of equity, debt and any other valuable consideration in such Private Placement by or from the existing shareholders of ePALS and/or their affiliates, as listed on Appendix A to this Agreement.

For purposes of this Agreement, the term "**Aggregate Consideration**" shall mean the total amount of cash and the fair market value on the date which is five days prior to the consummation of the Transaction (the "**Valuation Date**") of all other property paid or payable directly or indirectly to ePALS or any of its securityholders in connection with a Transaction (including (i) amounts paid to holders of any warrants or convertible securities of ePALS and to holders of any options or stock appreciation rights issued by ePALS, whether or not vested; (ii) the total amount of indebtedness for borrowed money or similar non-trade liabilities or obligations (including unfunded pension liabilities, guarantees, capitalized leases and the like) of ePALS repaid, retired, extinguished or assumed in connection with, or which otherwise remains outstanding as of the closing of, a Transaction; (iii) the fair market value of any assets of ePALS which are retained by or otherwise distributed to its stockholders or affiliates in anticipation of or in connection with a Transaction); and (iv) the present value of payments to be made under any non-compete, earn-out, consulting or other similar agreements entered into in connection with a Transaction, provided, that the portion of any amounts payable under such agreements that is attributable to the provision of services to be provided, as reasonably determined in good faith by Silverfern and ePALS based on amounts



Mr. Jonathan Ewert
ePALS Classroom Exchange, Inc.
January 4, 2005
Page 5

customarily paid to persons or entities holding similar positions or providing similar services, shall be excluded from Aggregate Consideration). Aggregate Consideration shall also be deemed to include, in the case of a joint venture, the total amount of cash and the fair market value on the Valuation Date of all other property contributed by the other party to ePALS or to the joint venture.

For purposes of calculating Sale Aggregate Consideration, all shares will be deemed transferred where a Transaction is effected by the transfer of shares (A) constituting 40% or more of the then outstanding equity securities of or equity interest in ePALS or its subsidiaries or affiliates, or (B) possessing 40% or more of the then outstanding voting power of the outstanding equity securities of or equity interest in ePALS or its subsidiaries or affiliates.

For purposes of calculating Transaction Aggregate Consideration, the value of any securities issuable in connection with a Transaction (whether debt or equity) that have an established public market (including any such securities subject to resale restrictions) will be determined on the basis of the last closing price in such market on the Valuation Date; and the value of securities that have no established public market or other property will be the fair market value of such securities or other property on such Valuation Date as determined in good faith and upon mutual agreement of ePALS and Silverfern, and (iii) all present value calculations will utilize a discount rate equal to the prime rate published in *The Wall Street Journal* on the Valuation Date (the "Prime Rate"). In the event an agreement for a Transaction provides for escrowed or contingent payments or other payments over time, such payments shall be deemed to be "Aggregate Consideration" when paid directly or indirectly to ePALS or any of its security holders, and ePALS shall be required to pay Silverfern's Sale Fee and/or Private Placement Fee (as calculated pursuant to this Section 2) upon such payments only as such payments are actually received by ePALS or such security holders.

No fee or other payment made to any third party in relation to the services to be rendered by Silverfern under the terms of this Agreement or otherwise shall reduce or eliminate the fees payable to Silverfern as outlined under this Section 2.

Notwithstanding the above, Silverfern's advisory efforts pursuant to this Agreement will continue after control is obtained to assist you with a second step merger or similar transaction.

Section 3.   Expenses. In addition to any fees that may be payable to Silverfern hereunder and regardless of whether any Transaction is proposed or consummated, ePALS hereby agrees, monthly upon request, to reimburse Silverfern for all reasonable fees and disbursements of Silverfern's counsel and all of Silverfern's reasonable travel and other out-of-pocket expenses incurred in connection with any actual or proposed Transaction or otherwise arising out of Silverfern's engagement hereunder; provided that, except as otherwise contemplated by Section 8 below, legal fees (other than in connection with Silverfern's rendering of the Opinion in the event Silverfern is requested to render same in accordance with Section 1 (i) above) will require the prior written consent of ePALS, and expenses in excess of $2,000 will require the prior consent of ePALS.

Section 4.   Termination of Engagement. Silverfern's engagement hereunder may be terminated by either ePALS or Silverfern at any time, with or without cause, upon written advice to that effect to the other party; provided, however, that


THE
SILVERFERN
GROUP

Mr. Jonathan Ewert
ePALS Classroom Exchange, Inc.
January 4, 2005
Page 6

    (a) Silverfern will be entitled to its full fee as outlined in Section 2 hereof in the event that (i) at any time prior to the expiration of 12 months after such termination by ePALS, a Transaction is consummated; or (ii) ePALS enters into a definitive agreement during the term of this Agreement or during such 12 month period which results in a Transaction; and

    (b) the provisions of this Section 4 and of Sections 3, 7, 8 and 11 hereof shall survive such termination.

Section 5.  Reliance on Others. ePALS confirms that it will rely on its own counsel, accountants and other similar expert advisors for legal, accounting, tax and other similar advice.

Section 6.  Publicity. In the event of consummation of any Transaction, Silverfern shall have the right, at its own expense, to disclose its participation in such Transaction, including, without limitation, the placement of "tombstone" advertisements in financial and other newspapers and journals, subject to ePALS' prior approval of the contents of such disclosure(s), which approval shall not be unreasonably withheld. Silverfern agrees that ePALS shall have the right to announce publicly the execution of this Agreement with Silverfern subject to Silverfern's prior approval of the contents of such announcement.

Section 7.  Scope of Responsibility. Neither Silverfern nor any of its affiliates (nor any of their respective control persons, directors, officers, employees or agents) shall be liable to ePALS or to any other person claiming through ePALS for any claim, loss, damage, liability, cost or expense suffered by ePALS or any such other person arising out of or related to Silverfern's engagement hereunder except for a claim, loss or expense that arises primarily out of or is based primarily upon any action or failure to act by Silverfern, other than an action or failure to act undertaken at the request or with the consent of ePALS, that is found in a final judicial determination (or a settlement tantamount thereto) to constitute bad faith, willful misconduct or gross negligence on the part of Silverfern.

Section 8.  Indemnity and Contribution. ePALS agrees to indemnify and hold harmless Silverfern and its affiliates (and their respective control persons, directors, officers, employees and agents) to the full extent lawful against any and all claims, losses, damages, liabilities, costs and expenses as incurred (including all reasonable fees and disbursements of counsel and all reasonable travel and other out-of-pocket expenses incurred in connection with investigation of, preparation for and defense of any pending or threatened claim and any litigation or other proceeding arising therefrom, whether or not in connection with pending or threatened litigation in which Silverfern or any other indemnified person is a party) arising out of or related to any actual or proposed Transaction or Silverfern's engagement hereunder; provided, however, there shall be excluded from such indemnification any such claims, losses, damages, liabilities, costs or expenses that arise primarily out of or are based primarily upon any action or failure to act by Silverfern, other than an action or failure to act undertaken at the request or with the consent of ePALS, that is found in a final judicial determination (or a settlement tantamount thereto) to constitute bad faith, willful misconduct or gross negligence on the part of Silverfern. In the event that the foregoing indemnity is unavailable or insufficient to hold Silverfern and other indemnified parties harmless, then ePALS shall contribute to amounts paid or payable by Silverfern and other indemnified parties in respect of such claims, losses, damages, liabilities, costs and expenses in such proportion as appropriately reflects the relative benefits received by, and, if applicable law does not permit allocation solely on the basis of benefits, fault of, ePALS and Silverfern in


THE SILVERFERN GROUP

Mr. Jonathan Ewert
ePALS Classroom Exchange, Inc.
January 4, 2005
Page 7

connection with the matters as to which such claims, losses, damages, liabilities, costs and expenses relate and other equitable considerations, subject to the limitation that in any event Silverfern's aggregate contributions in respect of such claims, losses, damages, liabilities, costs and expenses will not exceed the amount of fees actually received by Silverfern pursuant to this Agreement. For purposes hereof, relative benefits to ePALS and Silverfern of the Transaction shall be deemed to be in the same proportion that the total value received or contemplated to be received by ePALS and/or its security holders in connection with the Transaction bears to the fees paid to Silverfern pursuant to its engagement in respect of such Transaction.

Silverfern agrees to indemnify and hold harmless ePALS and its affiliates (and their respective control persons, directors, officers, employees and agents) to the full extent lawful against any and all claims, losses, damages, liabilities, costs or expenses that arise primarily out of or are based primarily upon any action or failure to act by Silverfern, other than an action or failure to act undertaken at the request or with the consent of ePALS, that is found in a final judicial determination (or a settlement tantamount thereto) to constitute bad faith, willful misconduct or gross negligence on the part of Silverfern subject to the limitation that in any event Silverfern's aggregate contributions in respect of such claims, losses, damages, liabilities, costs and expenses will not exceed the amount of fees actually received by Silverfern pursuant to this Agreement.

Neither party will, without the prior written consent of the other party, settle any litigation relating to Silverfern's engagement hereunder wherein the other party is a named defendant unless such settlement includes an express, complete and unconditional release of such other party and its affiliates (and their respective control persons, directors, officers, employees and agents) with respect to all claims asserted in such litigation or relating to Silverfern's engagement hereunder and the other party; such release to be set forth in an instrument signed by all parties to such settlement.

Section 9.   Governing Law; Jurisdiction.   This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to the conflicts of laws provisions thereof. Any right to trial by jury with respect to any claim, action, suit or proceeding arising out of this Agreement or any of the matters contemplated hereby is waived. EPALS and Silverfern each hereby submits to the non-exclusive jurisdiction of the Federal and State courts located in the County of New York, New York in connection with any dispute related to this Agreement or any of the matters contemplated hereby.

Section 10. No Rights in Shareholders, etc.  ePALS recognizes that Silverfern has been engaged only by ePALS, and that ePALS' engagement of Silverfern is not deemed to be on behalf of and is not intended to confer rights upon any shareholder, partner or other owner of ePALS or any other person not a party hereto as against Silverfern or any of its affiliates or any of their respective directors, officers, agents, employees or representatives. Unless otherwise expressly agreed, no one other than ePALS is authorized to rely upon ePALS' engagement of Silverfern or any statements, advice, opinions or conduct by Silverfern, and ePALS will not disclose such statements, advice, opinions or conduct to others (except ePALS' professional advisors and except as required by law). Without limiting the foregoing, any opinions or advice rendered to ePALS' Board of Directors or management in the course of ePALS' engagement of Silverfern are for the purpose of assisting the Board or management, as the case may be, in evaluating the Transaction and do not constitute a recommendation to any shareholder of ePALS concerning action that such shareholder might or should take in connection with the Transaction. Silverfern's role herein is that of an independent contractor;



Mr. Jonathan Ewert
ePALS Classroom Exchange, Inc.
January 4, 2005
Page 8

nothing herein is intended to create or shall be construed as creating a fiduciary relationship between ePALS and Silverfern.

Section 11. Disclosure.   ePALS acknowledges that Silverfern and its affiliates may have and may continue to have investment banking, financial advisory and other relationships with parties other than ePALS pursuant to which Silverfern may acquire information of interest to ePALS. Silverfern shall have no obligation to disclose such information to ePALS or to use such information in the preparation of the Opinion.

Section 12. Miscellaneous.  In order to coordinate most effectively the activities of ePALS and Silverfern contemplated by this Agreement, both ePALS (including management or other officers and directors of ePALS) and Silverfern will promptly inform the other of inquiries of third parties which it receives concerning a Transaction. Nothing in this Agreement is intended to obligate or commit Silverfern or any of its affiliates to provide any services other than as set out above. This Agreement may be executed in two or more counterparts, all of which together shall be considered a single instrument. This Agreement constitutes the entire agreement, and supersedes all prior agreements and understandings (both written and oral) of the parties hereto with respect to the subject matter hereof, and cannot be amended or otherwise modified except in writing executed by the parties hereto. The provisions hereof shall inure to the benefit of and be binding upon the successors and assigns of ePALS and Silverfern.

[this space intentionally left blank -- signatures appear on page following]



Mr. Jonathan Ewert
ePALS Classroom Exchange, Inc.
January 4, 2005
Page 9


If you are in agreement with the foregoing, please sign and return the attached copy of this Agreement, whereupon this Agreement shall become effective as of the date hereof.

We look forward to working with ePALS Classroom Exchange, Inc. on this important assignment.

Very truly yours,

THE SILVERFERN GROUP, INC.


By: _____
Clive R. Holmes
Chairman & CEO


By: _____
John R. Cattau
Principal


Accepted:

ePALS Classroom Exchange, Inc.

By: _____  2/7/05

Name: _JONATHAN EWERT_

Title: _CEO_



Mr. Jonathan Ewert
ePALS Classroom Exchange, Inc.
January 4, 2005
Page 10

## Appendix A

List of Shareholders in ePALS Classroom Exchange, Inc. as of January 4, 2005

| Shareholder Name | Shareholder Name | Shareholder Name |
|---|---|---|
| 103-7 LLC | Green, Richard Jr. & Karen M. | Tabah, Joseph & Annie L. |
| Abiscott, Josh | Guerra, Marianna | Tabah, Marc |
| Arbeznik, John C. | Hawkins, Kent | Todd, Ellin |
| Avnet, Mark | Heinsch, Richard L. & Joann | Tuthill, Howard S. |
| Bateman, Erik (NK Inc.) | Horn, Jeff | Tuthill, Howard S. (Terry), III |
| Beacon Technology Network | Horn, Kenneth | Uesugi Management and |
| Berman, Michael | Irving, George A. | Advisory Services |
| Bodenheimer, George W. | Irving, James F. & Beverly Girvin | Weiske, Eilert & Beatrice |
| Braman, Mark A. | Irving, John | Willbrand, Daniel C. |
| Bronzino, Joseph | James, Amanda | Willbrand, David J. |
| Burbank, R. Michael & Cindy A. | K. Francis Lee, M.D., M.P.H., | Willbrand, Jeffrey W. |
| Roberts | F.A.C.S | Willbrand, Micah A. |
| Burchill, Thomas F. | Kaun, Karen | Yip, Matthew |
| Cantor, Paul & Chieko Takeuchi- | Knollwood Investments, LLC | |
| Cantor | (William Glavin) | |
| Carpenter, Paul | Lemieux, Jacques | |
| Chelliah, Cooma | Marsden, Sean | |
| Chmiel, Robert | Maurin, Jean-Claude | |
| Dell, Andrew P. | McDonald, Edward T. | |
| Dell, Christopher M. | McDonald, Edward T., Jr. & | |
| Dell, Douglas | Teresa J. | |
| Dell, Emily K. | Meager, Kent M. & Elizabeth A. | |
| DeRosa, Paul | Miller, Barbara A. | |
| Di Scipio Enterprises, LLC | Miller, Joseph (Joel) H. III | |
| Di Scipio, Alicia C. (Custodial) | Moguli, Dean | |
| Di Scipio, Christin A. (Custodial) | Murphy, Kevin L. | |
| Di Scipio, Christine | Nicholson, Peter | |
| Di Scipio, Kathleen B. (Custodial) | O'Brien, Cornelius (Neal) & | |
| Di Scipio, R. Michael | Dorothy | |
| Di Scipio, Robert M. | O'Mara, Edwin J. | |
| Di Scipio, William M. (Custodial) | O'Mara, Megan M. | |
| Easton Media Group, LLC (Tim | O'Mara, Shannon F. | |
| Di Scipio) | Padilla Bay, LLC | |
| Elias, Carolyn | Paulus, Werner K. | |
| Ewert, Jonathan & Lee Jackson | Persky, Steven D. | |
| Farah, John | Redman, William E. | |
| Ferrara, Jennifer | Roscoe, David | |
| Fleishon, Joseph (NK Inc.) | Russo, Nick | |
| Fornari, James | DiScipio, Lauren | |
| Fornari, Matthew | Sauerteig, B. Lance | |
| Four Star Financial Services, | Savvidis, Nikolaos | |
| LLC | Schetlino, Joseph | |
| Glassberg, Richard | Schwarz, Dirk C. | |
| Glavin, William | Smith, Bruce P. | |
| Gould, Richard | Sodokoff, Lawrence (Larry) | |
| Gourgon, Richard R. | Stover, Matthew J. (Mat) | |


THE SILVERFERN GROUP

# EXHIBIT "B"

# Delaware

PAGE  1

## The First State

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF MERGER, WHICH MERGES:

"I-EP ACQUISITION CORP.", A DELAWARE CORPORATION,

WITH AND INTO "EPALS CLASSROOM EXCHANGE, INC." UNDER THE NAME OF "EPALS CLASSROOM EXCHANGE, INC.", A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF DELAWARE, AS RECEIVED AND FILED IN THIS OFFICE THE FIFTEENTH DAY OF DECEMBER, A.D. 2006, AT 6:28 O'CLOCK P.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE NEW CASTLE COUNTY RECORDER OF DEEDS.



Harriet Smith Windsor
Harriet Smith Windsor, Secretary of State

3189399   8100M

061154067

AUTHENTICATION: 5285536

DATE: 12-15-06

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 06:29 PM 12/15/2006*
*FILED 06:28 PM 12/15/2006*
*SRV 061154067 - 3189399 FILE*

# CERTIFICATE OF MERGER
## OF
# I-EP ACQUISITION CORP.
### with and into
## EPALS CLASSROOM EXCHANGE, INC.

Pursuant to Title 8, Section 251(c), of the Delaware General Corporation Law, the undersigned corporations executed the following Certificate of Merger:

**FIRST:**    The names of the constituent corporations participating in the merger herein are I-EP Acquisition Corp., a Delaware corporation, and ePALS Classroom Exchange, Inc., a Delaware corporation.

**SECOND:**    The Merger Agreement (the *"Merger Agreement"*) dated as of November 28, 2006, by and among In2Books, Inc, a Delaware corporation, I-EP Acquisition Corp., a Delaware corporation and wholly-owned subsidiary of In2Books, Inc. and ePALS Classroom Exchange, Inc., a Delaware corporation, has been approved, adopted, certified, executed and acknowledged by each of the constituent corporations in accordance with the requirements of Section 251 of the General Corporate Law of the State of Delaware.

**THIRD:**    As a result of the merger of I-EP Acquisition Corp. with and into ePALS Classroom Exchange, Inc., ePALS Classroom Exchange, Inc. shall be the corporation surviving the merger. The name of the surviving corporation (hereinafter referred to as the *"Surviving Corporation"*) is ePALS Classroom Exchange, Inc.

**FOURTH:**    The Amended and Restated Certificate of Incorporation of ePALS Classroom Exchange, Inc., shall be as set forth on **Exhibit A** attached hereto and shall be the Certificate of Incorporation of the surviving corporation.

**FIFTH:**    The merger is to be effective upon the filing of this Certificate of Merger.

**SIXTH:**    The Merger Agreement is on file at 1250 Connecticut Avenue, NW, Suite 201, Washington, DC  20036, the place of business of the Surviving Corporation.

**SEVENTH:**  A copy of the Merger Agreement will be furnished by the Surviving Corporation on request, without cost, to any stockholder of the constituent corporations.

309383 v2/RE

**IN WITNESS WHEREOF,** the undersigned corporations have caused this Certificate of Merger to be signed by duly authorized officers, this _15 ᵗʰ_ day of December, 2006.

I-EP ACQUISITION CORP.

By:
Name: Edmund Fish
Title:   Chief Executive Officer

EPALS CLASSROOM EXCHANGE, INC.

By:
Name: Jonathan Ewert
Title:   Chief Executive Officer

309383/RJE

12/12/2006  14:53    203-803-4711                    EWERT                      PAGE  08/08

IN WITNESS WHEREOF, the undersigned corporations have caused this Certificate of Merger to be signed by duly authorized officers, this 15<u>th</u> day of December, 2006.

I-EP ACQUISITION CORP.

By:
Name: Edmund Fish
Title: Chief Executive Officer

EPALS CLASSROOM EXCHANGE, INC.

By:
Name: Jonathan Ewert
Title: Chief Executive Officer

303383 v1/RE

<u>EXHIBIT A</u>

AMENDED AND RESTATED CERTIFICATE OF INCORPORATION

OF

EPALS CLASSROOM EXCHANGE, INC.

# AMENDED AND RESTATED

# CERTIFICATE OF INCORPORATION OF

# EPALS CLASSROOM EXCHANGE, INC.

## ARTICLE I.

The name of this corporation is EPALS CLASSROOM EXCHANGE, INC. (the "Corporation").

## ARTICLE II.

The address of the registered office of the Corporation in the State of Delaware is 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808, County of New Castle, and the name of the registered agent of the corporation in the State of Delaware at such address is the Corporation Service Company.

## ARTICLE III.

The purpose of this Corporation is to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of the State of Delaware.

## ARTICLE IV.

This Corporation is authorized to issue only one class of stock, to be designated Common Stock. The total number of shares of Common Stock presently authorized is One Hundred (100), each having a par value of one-tenth of one cent ($0.001) per share.

## ARTICLE V.

**A.** The management of the business and the conduct of the affairs of the Corporation shall be vested in its Board of Directors. The number of directors which shall constitute the whole Board of Directors shall be fixed by the Board of Directors in the manner provided in the Bylaws.

**B.** Except as may otherwise be provided in the Bylaws, the Bylaws may be altered or amended or new Bylaws adopted by the stockholders entitled to vote. The Board of Directors shall also have the power to adopt, amend or repeal Bylaws.

## ARTICLE VI.

**C.** The liability of the directors for monetary damages shall be eliminated to the fullest extent under applicable law.

309863 v2/RE

D.    Any repeal or modification of this Article VI shall be prospective and shall not affect the rights under this Article VI in effect at the time of the alleged occurrence of any act or omission to act giving rise to liability or indemnification.

## ARTICLE VII.

The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Certificate of Incorporation, in the manner now or hereafter prescribed by statute, and all rights conferred upon the stockholders herein are granted subject to this reservation.

****

309863 v2/RE

# EXHIBIT "C"

 

THE
SILVERFERN
GROUP, INC.

NEW YORK·SAN FRANCISCO
MERGERS AND ACQUISITIONS
MEMBER NASD

# Invoice

| Date | Invoice # |
|------|-----------|
| 10/23/2006 | OCT 06 5 |

Bill To:

Mr. Jonathan Ewert
Chief Executive Officer
ePALS Classroom Exchange, Inc.
70 Soundview Drive
Easton, CT 06612

| Description | Amount |
|-------------|--------|
| SUCCESS FEE ACCORDING TO THE TERMS OF OUR ENGAGEMENT LETTER DATED JANUARY 27, 2005 | $600,000.00 |
| LESS: RETAINER FEE PREVIOUSLY PAID | ($50,000.00) |
| DUE ON CLOSING | 550,000.00 |
| REIMBURSABLE EXPENSES PREVIOUSLY BILLED AND OUTSTANDING | |
| - AUGUST 31, 2006 | 2,067.19 |
| - JULY 31, 2006 | 2,434.64 |
| - FEBRUARY 28, 2006 | 126.86 |
| - MARCH 31, 2005 | 259.08 |
| TOTAL REIMBURSABLE EXPENSES | 4,887.77 |
| PLEASE WIRE FUNDS DIRECTLY TO CITIBANK, N.A. UNDER THE FOLLOWING INFORMATION: | |
| CITIBANK, N.A. ABA 021 0000 89 CHECKING ACCOUNT NUMBER 7842 2318 – THE SILVERFERN GROUP, INC. | |
| CITIBANK, N.A. BR #587 399 PARK AVENUE NEW YORK, NY 10043 | |
| PHONE: 212-559-7716 FAX: 212-355-7427 | |

| **TOTAL** | **$554,887.77** |
|-----------|------------------|

150 East 52nd Street · New York · NY 10022 · Telephone: +1 212 · 209 8860 · Fax: +1 212 · 209 8861

# EXHIBIT "D"

**From:** Clive Holmes
**Sent:** Saturday, November 25, 2006 3:54 PM
**To:** 'Jonathan Ewert'; 'Tim DiScipio'
**Cc:** Bill Harrison; 'Bob Di Scipio'
**Subject:** RE: conference call ASAP
**Importance:** High

Jonathan –

As you are no doubt aware, I have agreed with Werner Paulus to discuss his latest request for a fee reduction at the regular Silverfern Partners' meeting scheduled for 9.00am this coming Monday, November 27th.

To assist in the determination of why Silverfern might consider such a request, please provide me with the following information prior to 9.00am on Monday:

1. A list of all outstanding closing costs, by the party to whom such costs are owed, as ePALS is aware of/understands them as of the close of business on Friday, November 24, 2006.
2. A list of all concessions/reductions/discounts to such outstanding closing costs, by the party making them, as have been made and agreed as of the close of business on the date such list is prepared and sent to us.
3. A signed statement made on behalf of ePALS as to the factual correctness of items 1 and 2., specifically noting in particular that the concessions/reductions/discounts listed per 2. above are the actual and definitively agreed amounts of such items. We are not interested in any amount which has been "notionally" or "conceptually" agreed. Please be specific.

The above information and statement should come to us on ePALS letterhead, signed by you in your capacity as Chief Executive Officer. Please do not send us a simple Excel spreadsheet. Please note that Silverfern intends to rely upon this information in making its determination, and that any concession which it may or may not determine to offer to ePALS will be predicated on evidential confirmation of such minimum concessions having been made and received at closing. You may fax this information to my attention at +1 (212) 209-8861.

Following receipt of this information and due consideration of same at our Partners' meeting on Monday, I will be back in touch with you to communicate our decision regarding Mr. Paulus' request.

I look forward to hearing from you.

Regards,

Clive

----
Clive R. Holmes
Chairman & CEO

The Silverfern Group, Inc.

**Tel: (212) 209-8870**
Mobile: (646) 932-4900
Fax: (212) 209-8861

The Silverfern Group, Inc.
150 East 52nd Street
32nd Floor
New York, NY 10022
cholmes@silfern.com
www.silfern.com

The Silverfern Group, Inc. is a US Broker-Dealer. Member NASD.

This e-mail may contain confidential and/or privileged information. If you are not the intended recipient (or have received this e-mail in error) please notify the sender immediately and destroy this e-mail. Any unauthorized copying, disclosure or distribution of the material in this e-mail is strictly forbidden.

# EXHIBIT "E"

THE
SILVERFERN
GROUP, INC.

NEW YORK·SAN FRANCISCO

MERGERS AND ACQUISITIONS

MEMBER NASD

<u>**Via Email – Strictly Private and Confidential**</u>

November 27, 2006

Mr. Jonathan Ewert
Chief Executive Officer
ePALS Classroom Exchange, Inc.
70 Soundview Drive
Easton, CT 06612

Dear Jonathan:

Further to our telephone conversation with yourself, Tim DiScipio and Bob DiScipio of Friday November 24, 2006 wherein you requested that The Silverfern Group, Inc. ("**Silverfern**") further reduce its success fee by $200,000 to help ePALS Classroom Exchange, Inc. ("**ePALS**") meet its transaction closing costs pursuant to its potential merger with In2Books, Inc. (the "**Merger**"), and my subsequent telephone conversation with ePALS director and largest shareholder Werner Paulus of Saturday November 25, 2006 wherein Mr. Paulus subsequently requested that The Silverfern Group, Inc. ("**Silverfern**") further reduce its success fee by $150,000 to help ePALS meet its transaction closing costs pursuant to the Merger, the partners of Silverfern have met and have again considered your requests, and have determined that in light of the information we currently have to hand we are unable to agree to them.

As a matter of professional courtesy, however, and without prejudice to our rights to claim the full $550,000 due and payable to Silverfern in cash (plus outstanding expenses) on closing of the Merger under the terms of our signed engagement letter with you dated January 4, 2005 and as signed by you on behalf of ePALS on February 7, 2005 (the "**Engagement Letter**"), we may be willing, as a purely voluntary gesture on our behalf, to consider making some level of concession to further help get this deal closed based upon our prior receipt and review of the information requested from you by us via email on Saturday November 25, 2006, which for clarity is reproduced below:

1. A list of all outstanding closing costs, by the party to whom such costs are owed, as ePALS is aware of/understands them as of the close of business on the latter of Friday, November 24, 2006 or the date such statement is prepared if prepared after such date.

2. A list of all concessions/reductions/discounts to such outstanding closing costs, by the party making them, <u>as have been made and agreed</u> as of the close of business on the date such list is prepared and sent to us.

3. A signed statement made on behalf of ePALS as to the factual correctness of items 1 and 2., specifically noting in particular that the concessions/reductions/discounts listed per 2. above are the <u>actual and definitively agreed amounts of such items</u>. We are not interested in any amount which has been "notionally" or "conceptually" agreed. Please be specific.

The above information and statement should come to us on ePALS letterhead, signed by you in your capacity as Chief Executive Officer. Please do not send us a simple Excel spreadsheet. Please note that

Mr. Jonathan Ewert
ePALS Classroom Exchange, Inc.
November 27, 2006
Page 2


Silverfern intends to rely upon this information in its consideration, and that any concession which it may or may not determine to offer to ePALS will in any event be predicated on evidential confirmation of such minimum concessions having been made and received at closing, and that such minimum concessions shall not have been offset (by the issuance of stock and/or options in lieu, for example). You may fax this information to my attention at +1 (212) 209-8861.

In the absence of this further information received in the manner in which it is hereby requested we shall pursue collection of our full Success Fee plus expenses ($554,887.77) pursuant to the Engagement Letter. While this letter is evidence of our good-faith intent with regard to our consideration of potential further assistance in getting the Merger completed, nothing herein should be construed to be legally binding upon Silverfern.

We look forward to receipt of such further information as you can share with us, and to the successful closing of this important transaction.

Very truly yours,


Clive R. Holmes
Chief Executive Officer


cc:     Werner Paulus, ePALS Classroom Exchange, Inc.
        Tim DiScipio, ePALS Classroom Exchange, Inc.
        Bill Harrison, The Silverfern Group, Inc.



# EXHIBIT "F"

**From:** Michael Cytrynbaum [mailto:Michael@cytrynbaum.com]
**Sent:** Monday, November 27, 2006 1:35 AM
**To:** Clive Holmes
**Cc:** Bill Harrison
**Subject:** Closing expenses

Good morning Clive or at least I assume that it will be morning when you read this e-mail. Please allow me to introduce myself. I am the most recent addition to the Board of ePals and I have had the pleasure of working with Bill Harrison on the ePals/In2Books file. I have been advised that you would appreciate receiving a summary of our current status with our project to reduce the closing funds required for the transaction contemplated between In2Books and ePals. The following represents arrangements of which I am aware and given that this past weekend was a holiday weekend, I have not been able to canvass all of the people who are participating in this project:

1) Legal

> a) a reduction of at least $50,000 from Wilson Sonsini. Their billing which was estimated to be at least

> $220,000 has been capped at $170,000 and given current additional work their final billing would have

> been greater that $220,000.

b)    a $90,000 reduction was obtained from Cooley and Co.
c)    Gordon Kushner – Has agreed to cap his fees at $20,000. ON a time basis his current billing would be in excess of $30,000

d)    Pillsbury Winthrop have agreed to a $20,000 payment on an account of about $29,000

2)    The accounting firm has agreed to take $11,000 in full payment of a $25,000 account.

That is what has been committed to date and I am sure that more will follow this week. In summary there has been support of our plan as most of those approached want to help us get to the close believing it to be in our mutual best interest.

Regards,

Michael

# EXHIBIT "G"



**CLASSROOM EXCHANGE**

December 1, 2006


Mr. Clive R. Holmes
The Silverfern Group, Inc.
150 East 52nd Street
New York, NY 10022

RE:    <u>November 27, 2006 Letter from The Silverfern Group</u>

Dear Clive:

In response to the above-referenced letter, <u>Attachment A</u> attached hereto is a list of all outstanding closing costs, including long-term debt and trade payables, that ePALS Classroom Exchange, Inc. ("ePALS") is aware of in connection with its proposed merger with In2Books, Inc. ("In2Book") as of the date of this letter, along with a corresponding list of concessions/reductions/discounts ("concessions") to such outstanding amounts by the party making them, as have been made and agreed by ePALS and such party as of the date of this letter.

In my capacity as Chief Executive Officer of ePALS, I certify that (i) the statements contained in this letter and <u>Attachment A</u> are factually correct as of the date of this letter with respect to those commitments to concessions personally negotiated by me and are factually correct, to the best of my knowledge, with respect to those concessions negotiated by other parties on behalf of ePALS and (ii) the concessions set forth in <u>Attachment A</u> are the actual and definitively agreed amounts of such items by such party with respect to those commitments to concessions personally negotiated by me and are the actual and definitively agreed amounts, to the best of my knowledge, with respect to those concessions negotiated by other parties on behalf of ePALS.

Sincerely,

Jonathan Ewert
Chief Executive Officer

191 Post Road West
Westport, CT 06880
USA

353 Dalhousie Street
Ottawa  K1N 7G1
Ontario, CANADA



| Party Owed | Amount Of Fees | Concession | Net Amount Payable at Closing |
|---|---|---|---|
| McClarty | $25,000 (CDN) | $14,000 | $11,000 |
| Pillsbury | $26,374 | $6,374 | $20,000 |
| Wilson Sonsini* | $220,000 + | $50,000 | $170,000 |
| Intralinks ** | $8,000 | $0 | $8,000 |
| Kelly Drye *** | $18,883 + | $6,883 | $12,000 |
| Stockholder Buyouts (Silverfern Estimate) | $85,000 + | N/A | $85,000 |
| Bob DiScipio | $20,000 | $5,037 | $14,963 |
| Employee Business Expenses | $52,000 | $0 | $52,000 |
| Gordon Kushner | $31,000 + | $11,000 | $20,000 |
| Gowlings | $4,984 (CDN) | $1,000 | $3,984 |
| Silverfern Fee Balance | $550,000 | TBD | TBD |
| Silverfern Expense Reimbursement | $4,878 | $0 | $4,878 |

| | |
|---|---|
| * | Negotiated by Ed Fish |
| ** | No relationship (through Silverfern) |
| *** | Received assurance; awaiting confirmation |
| + | Final fees not yet determined |

191 Post Road West
Westport, CT 06880
USA

353 Dalhousie Street
Ottawa  K1N 7G1
Ontario, CANADA

# EXHIBIT "H"

**THE
SILVERFERN
GROUP, INC.**

**Via Email – Strictly Private and Confidential**

December 5, 2006

Mr. Jonathan Ewert
Chief Executive Officer
ePALS Classroom Exchange, Inc.
70 Soundview Drive
Easton, CT 06612

Dear Jonathan:

Thank you for your email of Friday December 1st, 2006 forwarding to us your letter of the same date together with its attachment (the "**ePALS Dec 1 Response**") wherein you formally responded to our request of November 27, 2006 for further information pursuant to your request that The Silverfern Group, Inc. ("**Silverfern**") further reduce its success fee by $150,000 to help ePALS meet its transaction closing costs pursuant to its potential merger with In2Books, Inc. (the "**Merger**"). Subsequent to our receipt of the ePALS Dec 1 Response the partners of Silverfern met and have again considered your request, and have determined that in light of the information we currently have to hand (including the information contained in the ePALS Dec 1 Response) we are unable to agree to it.

Without prejudice to our rights to claim the full $550,000 due and payable to Silverfern in cash (plus outstanding expenses) on closing of the Merger under the terms of our signed engagement letter with you dated January 4, 2005 and as signed by you on behalf of ePALS on February 7, 2005 (the "**Engagement Letter**"), we would like to lay out by way of this letter such additional information as may help us, by way of a purely voluntary gesture on our behalf, to consider making some level of concession to further help get this deal closed.

1.  A list of all outstanding closing costs, by the party to whom such costs are owed, as ePALS is aware of/understands them as of the close of business on the latter of Friday, November 24, 2006 or the date such statement is prepared if prepared after such date.

This has been provided by way of the ePALS Dec 1 Response. Thank you.

2.  A list of all concessions/reductions/discounts to such outstanding closing costs, by the party making them, as have been made and agreed as of the close of business on the date such list is prepared and sent to us.

This has been provided by way of the ePALS Dec 1 Response. Thank you.

3.  A signed statement made on behalf of ePALS as to the factual correctness of items 1 and 2., specifically noting in particular that the concessions/reductions/discounts listed per 2. above are the actual and definitively agreed amounts of such items. We are not interested in any amount which has been "notionally" or "conceptually" agreed. Please be specific.

Mr. Jonathan Ewert
ePALS Classroom Exchange, Inc.
December 5, 2006
Page 2

This was provided by way of the ePALS Dec 1 Response, but not in a manner which sufficiently answered our request contained in our letter to you of November 27, 2006. Specifically, the ePALS Dec 1 Response did not specify:

A. That "such minimum concessions shall not have been offset (by the issuance of stock and/or options in lieu, for example)"; or

B. That the concessions as noted in the ePALS Dec 1 Response will be able to be evidentially confirmed by Silverfern as having been made and received at closing.

Additionally, and as pertains particularly to item A noted above, please certify (in the manner requested by us in our letter to you of November 27, 2006, except that all answers should be after – and should specifically state that they are being delivered after - due inquiry by you of all executives and Board members of both ePALS and In2Books, Inc.) answers to the following questions which have come out of our review of the ePALS Dec 1 Response. Please note that a knowledge qualifier will not be acceptable with regard to this certification for any answer additionally given:

McClarty:     Owed: $25,000 (CDN)     Concession: $14,000     Net Amt Payable: $11,000

Please specifically confirm that McClarty has not been offered, nor was it offered as an inducement to accept a concession on its account, any post-Merger work with the surviving corporation (or any affiliate thereof) post Merger.

Wilson Sonsini: Owed: $220,000     Concession: $50,000     Net Amt Payable: $170,000

Please confirm that this concession was entirely voluntarily on Wilson Sonsini's behalf (and as such it is comparable to the request you have made of Silverfern). Specifically in support of the voluntary nature of Wilson Sonsini's concession, please confirm: (i) that there was no agreed "set fee or estimate" of fee received from Wilson Sonsini at the time of their engagement by ePALS at any amount lower than the $220,000 ultimately billed to ePALS, which would form the basis for ePALS having requested a fee reduction; (ii) that there has been no discussion with anyone at Wilson Sonsini by ePALS or In2Books, Inc. indicating that any of the work completed by Wilson Sonsini in connection with the Merger was either excessive, below the expected standard, or otherwise in any way deficient, which would form the basis for a request for a fee reduction; and (iii) that Wilson Sonsini has not been offered, nor was it offered as an inducement to accept a concession on its account, any post-Merger work with the surviving corporation (or any affiliate thereof) post Merger.

Intralinks:     Owed: $8,000     Concession: $0     Net Amt Payable: $8,000

Please confirm why Intralinks is listed has having made no concession. We understand their work to have been performed, over the entire length of the ePALS assignment (versus Kelly Drye, at circa only two months, for example), on time, on budget, and satisfactorily (no evidence of fee overrun, no evidence of substandard work). As such, we view Intralinks as a creditor to ePALS which is highly comparable to Silverfern. If Silverfern is to make a concession, but Intralinks does not, effectively money has been taken out of Silverfern's pocket and put into Intralinks', or such other creditor who has not. Please confirm that a concession has been negotiated, and the amount of that concession.



Mr. Jonathan Ewert
ePALS Classroom Exchange, Inc.
December 5, 2006
Page 3

Bob DiScipio:  Owed: $20,000          Concession: $5,037     Net Amt Payable: $14,936

We note that Bob DiScipio was the recipient of certain ePALS options in October 2006. Please confirm that the amount of the $5,037 concession from Bob DiScipio is in no way related to, in lieu of, or otherwise in any way connected to, the issue of either these options or any other options or shareholder interests in ePALS. Our view is that if there is any such link, that such "concession" is not actually a concession at all, but is a transfer of an amount receivable in cash to an amount receivable in kind, and is therefore not a proxy for the request to reduce fees which Silverfern has been asked by you to make.

Additionally, Silverfern would find it unreasonable to be asked for a voluntary reduction in its fees when an ePALS Board Member and shareholder, who is himself asking Silverfern for such reduction, is not prepared to first offer such a reduction in the amount(s) he or she is so owed. To agree to such a request would serve no purpose other than to transfer money from Silverfern's pocket to that of the ePALS' interested party, which we would not find acceptable. Please be very specific in your answer to this question.

Employee Business Expenses:  Owed: $52,000 Concession: $0          Net Amt Payable: $52,000

Our understanding is that these amounts reflect monies owed to ePALS Board Member and shareholder Tim DiScipio. Please confirm either (x) that none of these monies are owed, either directly or indirectly, to Tim DiScipio; or (y) the amount of concession, in cash and without any form of set-off or current or future receipt of payment in kind, that Tim DiScipio is making.

Silverfern would find it unreasonable to be asked for a voluntary reduction in its fees when an ePALS Board Member and shareholder, who is himself asking Silverfern for such reduction, is not prepared to first offer such a reduction in the amount(s) he or she is so owed. To agree to such a request would serve no purpose other than to transfer money from Silverfern's pocket to that of the ePALS' interested party, which we would not find acceptable. Please be very specific in your answer to this question.

Gordon Kushner:          Owed: $31,000+          Concession: $11,000     Net Amt Payable: $20,000

We note from our review of the ePALS capitalization table that Gordon Kushner appears as a recent recipient of options. Please confirm the amount of the $11,000 concession from Gordon Kushner is in no way related to, in lieu of, or otherwise in any way connected to, the issue of either these options or any other options or shareholder interests in ePALS. Our view is that if there is any such link, that such "concession" is not actually a concession at all, but a transfer of an amount receivable in cash to an amount receivable in kind, and is therefore not a proxy for the request to reduce fees which Silverfern has been asked by you to make.

The above information and statement(s) should come to us on ePALS letterhead, signed by you in your capacity as Chief Executive Officer. As previously indicated to you, Silverfern intends to rely upon this information in its further consideration of your requests.

On a conceptual level and in the interests of full and honest disclosure, you should be aware that Silverfern is unlikely to agree to any concession as you have requested in the absence of the following:



Mr. Jonathan Ewert
ePALS Classroom Exchange, Inc.
December 5, 2006
Page 4

1. Evidence that ALL creditors of ePALS for amounts due at closing have made a voluntary fee concession

It is the view of Silverfern's partners that if Silverfern is to make a voluntary concession in the absence of all parties making voluntary concessions (defined as parties who do not have any legitimate, or potentially legitimate, business reason to do so), then the effect will be simply to transfer monies from Silverfern to other creditors on closing. As Silverfern has never either offered or agreed to either pay such closing costs on behalf of ePALS, or to assist ePALS in the payment of such closing costs to other creditors on closing, it does not consider any concession to be appropriate in such circumstances.

2. Evidence that ALL ePALS interested parties owed amounts at closing have made a concession

As noted above, Silverfern does not find it reasonable, under any construct, that ePALS should request any amount of voluntary fee reduction/concession from Silverfern in the absence of a correspondingly meaningful concession from all ePALS interested parties. We are distressed that the information sent to us by way of the ePALS Dec 1 Response appears to indicate that at least two ePALS interested parties, Bob DiScipio and Tim DiScipio, are not making any concession themselves, yet both of these individuals were on the telephone call with myself of Friday, November 24, 2006 wherein they (and ePALS by way of their positions on the ePALS Board of Directors) asked Silverfern to itself make a concession.

We appreciate the additional effort you have made in providing us with the information contained in the ePALS Dec 1 Response. However, in the absence of our prior receipt of the further detailed information noted above, received in the manner in which it is hereby requested, we shall pursue collection of our full Success Fee plus expenses ($554,887.77) pursuant to the Engagement Letter, in cash on closing. While this letter is evidence of our good-faith intent with regard to our additional consideration of potential further assistance in getting the Merger completed, nothing herein should be construed to be legally binding upon Silverfern.

We look forward to receipt of such further information as you can share with us, and to the successful closing of this important transaction.

Very truly yours,

Clive R. Holmes

Clive R. Holmes
Chief Executive Officer


cc:    Werner Paulus, ePALS Classroom Exchange, Inc.
       Tim DiScipio, ePALS Classroom Exchange, Inc.
       Bill Harrison, The Silverfern Group, Inc.
       John R. Cattau, CAO, The Silverfern Group, Inc.

