UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
THE SILVERFERN GROUP, INC., :
:
                Plaintiff, :    Case No. 06 CV 15404 (LBS)
:
           v. :
:    **AFFIDAVIT OF**
ePALS CLASSROOM EXCHANGE, INC., :    **EDMUND FISH**
:
                Defendant. :
------------------------------------------------------------X

STATE OF Virginia    )
                       ) .ss:
COUNTY OF Fairfax    )

    EDMUND FISH, being duly sworn, deposes and says:

    1.    I am the Chief Executive Officer of ePALS, Inc. the entity that was formed by the merger between In2Books Inc. ("I2B") and ePALS Classroom Exchange, Inc. ("ePALS"). I make this affidavit based on personal knowledge, and I submit it in opposition to plaintiff's motion for judgment on the pleadings and for summary judgment.

    2.    I joined I2B as CEO in mid July, 2006. Miles Gilburne, the Co-Chair of I2B's Board, who is very experienced in merger and acquisitions transactions, also participated on behalf of I2B in this merger. Earlier in his career Miles had been head of Corporate Development at AOL, a Board member of Time Warner, a partner at Weil, Gotshal & Manges LLP and other law firms, and a venture capitalist.

    3.    In my career prior to I2B at Weil Gotshal & Manges LLP, in upper management in technology companies, and in upper management at America OnLine, I have been involved with dozens of merger and acquisition transactions and have often worked with investment bankers.

4. When I joined I2B, it was in the process of negotiating a merger with ePALS. As the parties reached agreement, we presented to both Boards for approval in late September. The parties intended to close on or before November 1, 2006.

5. In late October, first by phone call and a day or two later at the offices of our attorneys, I heard for the first time that ePALS was not saleable because of problems stemming from the issuance of shares that could not be shown to have been authorized properly. This fundamental problem meant that the closing targeted for November 1, 2006 could not occur and any closing could not be consummated until the problems were fixed. I told Bill Harrison of Silverfern that Silverfern's failure to identify this problem was incompetent and grossly negligent. I indicated that Miles Gilburne who had even more experience than I felt even stronger about Silverfern's incompetent performance.

6. In mid-November, 2006, I participated in a telephone meeting of the Board of ePALS. In that telephone call I extensively discussed the problems caused by the unauthorized shares, the fact of their late discovery, and Silverfern's gross negligence in this matter. I indicated that both In2Books and ePals had been damaged by this conduct, stated that the expenses of the transaction were "out of whack" and had to be reduced, and specifically that Silverfern's fee should be substantially reduced because it had been a root cause of the problems. I said that Miles Gilburne and I had done hundreds of deals, and that he and I agreed that the most fundamental duty of an investment banker is to get the capitalization right. I stated that no one could say that Silverfern had earned its fees because we had learned that Silverfern, despite its representations had not even done the most basic of work. I asked Tom Burchill, an ePALS director who was also a partner in Silverfern, for his comments on this matter and he offered no defense or explanation.

7. ePALS directors Michael Cytrynbaum and Werner Paulus represented ePALS in attempting to settle Silverfern's claim for fees. They authorized me to contact Silverfern and make my criticisms (with which they agreed) to Silverfern on behalf of ePALS, and attempt to settle the dispute.

8. I had a telephone call with Clive Holmes of Silverfern in the week before the December 15, 2006 Closing. In it I told Mr. Holmes, among other things:

- in response to an assertion by Mr. Holmes that no one ever said that Silverfern did not do a good job, I disagreed and referred to my mid-November ePALS Board of Directors call and to multiple conversations I had had with Bill Harrison and I told him it was still my opinion that those criticisms were well-founded; he replied in substance that he didn't know about these things; I also told him that he should have known, that his partner Tom Burchill knew, that Bill Harrison knew, and now that he knew, the matter of Silverfern's poor performance needed to be addressed. Mr. Holmes offered no explanation or rebuttal of any kind, except to say that he had asked his partners once already for a reduction in fees and been unable to get them to agree.
- I told him that his firm's website reflected that his firm helped with some of the very stock issuances that were unauthorized; he said there was a disclaimer on the website;
- I told him that, given his experience, and even if he disagreed with other aspects of this matter, that he had to agree that in a

3

roughly $4 million transaction, an investment banker's fee of over $600,000 is way out of proportion; Mr. Holmes replied, "That's something I can agree with."

- I reiterated that because Silverfern did not fulfill its obligations to its client under the agreement, it was not entitled to the $550,000 it claimed that it was owed.

- Holmes undertook to again raise the issue with his partners, but never communicated any explanation or proposal

9. After the closing I again tried to reach Holmes to resolve our dispute but I was told that he was traveling and was unavailable. Holmes eventually left me a voice message to the effect that there was nothing to discuss. Shortly thereafter, Silverfern served its complaint.

10. For the foregoing reasons, plaintiff's motion for judgment on the pleadings and for summary judgment should be denied.

Edmund Fish

Sworn to before me this 27 day of March, 2007

Notary Public

PETER E. HUANG
NOTARY PUBLIC
MY COMMISSION EXPIRES 4/30/10
COMMONWEALTH OF VIRGINIA

4