UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
THE SILVERFERN GROUP, INC.,

                  Plaintiff,                    Case No. 06 CV 15404 (LBS)

            v.

ePALS CLASSROOM EXCHANGE, INC.,         **AFFIDAVIT OF**
                                                      **DOUGLAS WALLACE**

                  Defendant.
-----------------------------------------------------------X

STATE OF __Virginia__ )
                        ) .ss:
COUNTY OF __Fairfax__ )

    DOUGLAS WALLACE, being duly sworn, deposes and says:

    1.    I am the Chief Financial Officer of ePALS, Inc. the entity that was formed by the merger between In2Books, Inc. ("I2B") and the former ePALS Classroom Exchange, Inc. ("EPALS") on December 15, 2006. I make this affidavit based on personal knowledge and submit it in opposition to plaintiff's motion for judgment on the pleadings and for summary judgment.

    2.    I was the Chief Financial Officer of I2B at all times relevant to this case. Over the summer of 2006 as we negotiated the terms of merger between I2B and ePALS, we were aware that ePALS had retained Silverfern as investment bankers to, *inter alia*, perform services to prepare and execute the transaction on behalf of ePALS. We were led to believe by Bill Harrison, as were our counterparties at ePALS, that Silverfern's continuing participation in facilitating the sale meant that it had satisfied itself that the sale of ePALS was feasible, and in

particular that its capitalization table presented no problems that would preclude the merger agreed by the parties.

3. I learned during the last week of October, 2006 of due authorization problems, including the absence of records for the issuance of shares with proper authorization, and that as a result the merger could not be closed on or before November 1, 2006 as planned. As a result of the newly discovered problems, and Bill Harrison's misrepresentation, ePALS was not a saleable entity. This problem directly caused a delay in the closing date for six weeks to December 15, 2006 and other problems as specified below. It also required renegotiation of agreements between ePALS and certain ePALS shareholders, and of the terms of merger between I2B and ePALS.

## DAMAGES CAUSED BY THE CAPITALIZATION PROBLEM

4. Damages sustained by ePALS and I2B as a result of the 6 weeks lost as a merged organization, *i.e.*, the difference in time between our planned closing and final closing, can be measured by the impact of the parties' not working as a merged company. The following areas were affected by this delay:

(a) <u>Revenue: School sales for school mail.</u>

During the most critical sales window for the school market, we were not able to execute aggressive sales initiatives that would have certainly increased revenues. ePALS worked during this time frame on a steady basis, not making aggressive sales and marketing plans, as they were not in a position to spend capital. The window lost is not only measured in terms of six weeks of sales but, in many instances, an entire semester in lost sales – the heart of the 2006-07 school year -- as well as funding for the following 2007-08 school year due to the timing of eRate applications (federally funded money) that were filed during this period, as well as the lost

opportunity for schools to conduct trials. This is so because schools that may have purchased in November for the second semester beginning in January will not delay their buying decisions until the September semester. The lost revenues are forecasted to be $500,000 for eRate and School District Sales for 2006-07 and in excess of $1,500,000 for 2007-08, as well as continuing losses from lost accounts in renewal years.

(b) Community Sales

I2B's expertise is driving revenue through an active community audience. We lost six weeks of the use of this asset. We forecast the six weeks lost equate to $100,000 in lost revenues – time we will never get back.

5. ePALS Canadian office has monthly operating expenses of $150,000. Due to the delay in closing, we lost the opportunity to downsize or close that office for the six weeks of delay. The loss sustained in additional operating expenses is estimated at over $200,000.

6. As mentioned above, the late discovery of the capitalization structure problem required renegotiation of terms between ePALS and one of its shareholders and creditors, Mr. Paul Carpenter. The resolution required I2B to assume $400,000 of ePALS' debt which was owed to Mr. Carpenter, and provided for a dilution of at least 900,000 shares to ePALS' shareholders.

7. From July 2006 on, ePALS made it clear that Silverfern was handling all of the ePALS financial and capitalization information, and that Bill Harrison was the contact person at Silverfern. At any time between August and October, 2006 when the I2B team needed to deal with ePALS' capital table, Bill Harrison not only provided the information but also actively represented its authenticity and answered my questions about it. For example, when I asked for the capital table to do the merger calculations for the "final" merger agreement (before the

November 1 closing date), Bill Harrison sent it to me on October 26 and followed up with a conversation.

8.  In fact, during September and October, 2006, I spoke with Bill Harrison three or four times a week, often dealing with shareholder accreditation issues, capital tables and conversion issues, and the post-merger capital structure. Since he spoke with authority on behalf of ePALS and never qualified or conditioned his presentation to me of capital tables or related information, I concluded that, like any investment banker, he had vetted his facts and figures and that they were reliable. After discovery of these problems, neither Bill Harrison nor anyone else at Silverfern took any action to help remedy the host of problems that had been identified and that resulted from Silverfern's inadequate performance of the duties that it had assumed and that he had represented to me on multiple occasions had been properly performed.

9.  For the foregoing reasons, I ask that plaintiff's motions for judgment on the pleadings and summary judgment be denied.

                                               _____
                                                        Douglas Wallace

Sworn to before me this 27 day
of March, 2007

_____
Notary Public



Notary seal: PETER E. HUANG, NOTARY PUBLIC, MY COMMISSION EXPIRES 4/30/10, COMMONWEALTH OF VIRGINIA

00037431.DOC
#50680                         4