UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
THE SILVERFERN GROUP, INC., :
:
                Plaintiff, :   Case No. 06 CV 15404 (LBS)
:
           v. :
:   **DECLARATION OF**
ePALS CLASSROOM EXCHANGE, INC., :   **VICTORIA McEACHERN**
:
             Defendant. :
------------------------------------------------------------X

      Pursuant to 28 U.S.C. § 1746, **VICTORIA McEACHERN** hereby declares:

    1.     I was the General Manager of ePALS Classroom Exchange, Inc., ("ePALS") until it merged with In2Books, Inc. ("I2B") on December 15, 2006. I am currently the General Manager of ePALS, Inc., the company that was formed by that merger, I make this declaration based on my own personal knowledge and submit it in opposition to Plaintiff's motion for summary judgment.

    2.     As part of my job responsibilities with both ePALS and ePALS, Inc., I maintain the company's records and documents as they are produced in the ordinary course of business. I am currently in the Ottawa office of ePALS, Inc., which was the main office of ePALS and where ePALS' business records are currently located.

    3.     Attached as Exhibit A is a true and correct copy of a document which Silverfern sent to ePALS entitled "Project Safeway, Preliminary Due Diligence Request List," dated February 14, 2005. Project Safeway was the code name for the project that Silverfern was engaged in, to market ePALS to potential acquirers.

    4.     Attached as Exhibit B is a true and correct copy of the Minutes of the November 28, 2006 Meeting of the ePALS' Board of Directors.

5.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 27th, 2007

*Victoria McEachern*
Victoria McEachern

# Exhibit A

STRICTLY PRIVATE AND CONFIDENTIAL

# Project Safeway

## Preliminary Due Diligence Request List

Note: When possible please do not send documents in PDF format

As of: February 14, 2005



STRICTLY PRIVATE AND CONFIDENTIAL

<u>Received</u>

I. Financial Information
   a. 2001 and 2002 PWC Audit — Y
   b. Financials for 2003 and 2004
   c. 2005 through 2008 projections
      i. Capex requirements
      ii. Revenue by country
      iii. Revenue from other product offerings
   d. Capitalization Table (as of 10/30/04) — Y

II. Company Information
   a. Business plan — Y
   b. Biographies of key executives — Y
   c. List of potential buyers — Y
   d. Management email addresses — Y
   e. Corporate Documents
      i. Corporate Book — Y
      ii. Operating Agreement — Y
      iii. Contribution Agreement — Y
      iv. Bylaws — Y
      v. Canadian Minute Book — Y
      vi. Board Minutes — Y
      vii. Membership Ledger — Y
      viii. Certificate of Incorporation — Y
      ix. Epals and ECE Merger Agreement — Y
      x. Shareholder Agreements
   f. Corporate Org. Chart
      i. Number of employees by
         1. Job function
         2. Geographic location
         3. Part time/Full time status
   g. Description of information systems
   h. Board Presentations
   i. Copies of major contracts
      i. IBM
      ii. Sprint
      iii. Cablevision
      iv. Studentmentoring


THE SILVERFERN GROUP

STRICTLY PRIVATE AND CONFIDENTIAL

<u>Received</u>

    j. Customer list
        i. Retention rates
        ii. Contract expiration date
    k. 2000 Option Plan
    l. PWC Audit Committee Presentation
    m. D&O Policy
    n. Shareholder resolutions
    o. Office and equipment leases
    p. Canadian employment agreements
    q. Note holder repayment documents
    r. Copy of all correspondence with potential buyers
        i. Discovery acquisition offer
        ii. Other

III. Legal
    a. Patent Applications
    b. Information on Carpenter
        i. Memo from Alan Talesnic
        ii. Supporting documentation
        iii. Letters from Ewert
        iv. Settlement offers
    c. Copy of severance agreement with Sherry
    d. Overview of historical or pending litigation
    e. Change of control provisions for any contracts

IV. Market and Marketing Information
    a. Third party industry data / industry research
        i. Keryston Associates    Y
        ii. The Radicati Group    Y
        iii. Grunwald Surveys    Y
        iv. 2020 Visions (US Dept. of Commerce)    Y
        v. PEW Internet & Amer. Life Project    Y
        vi. Quality Education Data (2003-2004)    Y
        vii. US Dept. of Ed. (10/03)    Y
        viii. School funding (by city and state)    Y


THE SILVERFERN GROUP

STRICTLY PRIVATE AND CONFIDENTIAL

<u>Received</u>

b. Marketing documents
  i. Brochures                                    Y
  ii. DVDs                                       Y
c. Marketing Surveys
  i. Online marketing results                   Y
  ii. Brand awareness data
d. Company Logo (high resolution)



# Exhibit B

Minutes of the November 28, 2006 Meeting of the Board of Directors of
ePALS Classroom Exchange, Inc., a Delaware corporation

A meeting of the Board of Directors of ePALS Classroom Exchange, Inc., a Delaware corporation (the "Company"), was held pursuant to notice duly given or properly waived in accordance with the Company's bylaws on November 28, 2006 at 12:00 pm Eastern Time. The directors of the Company participating in the meeting were as follows: Tom Burchill, Michael Cytrynbaum, Tim DiScipio, Bob DiScipio, and Werner Paulus. No directors were absent. The meeting was held via teleconference during which all members could hear and be heard.

Also participating were Jonathan Ewert and Victoria McEachern of the Company, Bill Harrison of The Silverfern Group, Jocelyn Starzak of Wilson Sonsini Goodrich and Rosati (WSGR) and Gordon Kushner, Company counsel.

Acting as Chairman of the meeting, Werner Paulus called the meeting to order, seconded by Timothy DiScipio.

Jonathan Ewert provided the Board with an update on general business matters.

Mr. Ewert updated the Board on his negotiations with Nic Savvidis to convert his existing debt into shares of the Company. Mr. Ewert reported that he had reached an agreement with Mr. Savvidis to convert his existing debt into 1,216,433 shares of Common Stock of the Company. Mr. Ewert reminded the Board that the Board had previously authorized Mr. Ewert to settle with Mr. Savvidis for up to 1,400,000 shares of Common Stock and authorized Mr. Ewert to execute the documents and agreements necessary to finalize the conversion with Mr. Savvidis. Mr. Ewert indicated that such agreements were executed on October 23, 2006.

Mr. Ewert then informed that Board that a written consent to waive the Company's right of first refusal and approve certain proposed share transfers had been circulated to the Board prior to the meeting and asked all directors to sign the consent and return it for the Company records.

Mr. Ewert then reviewed the intent of the Company to issue an aggregate of 522,071 shares of Common Stock via the Company's Stock Option Plan, either through option grants or issuance of restricted stock, to Tom Burchill, Bob DiScipio, Jonathan Ewert, and Gordon Kushner with a strike price at par value, subject to Company counsel's research and confirmation that such issuances comply with applicable law and can be done so with a minimum compensation expense to the Company. Discussion ensued. Mr. Ewert advised that a written consent would be sent to the Board for signature once the necessary research had been concluded.

In advance of the meeting the following documents pertaining to the potential Merger with In2Books were delivered electronically to the Board: the Merger Agreement, the Information Statement, the Stockholders Agreement, the Registration Rights Agreement, the Exchange Agreement, the Settlement Agreement with Paul Carpenter and a presentation regarding surplus capital in connection with the Exchange Agreement. Jocelyn Starzak then provided the Board with an overview of the documents and described the purpose for the Exchange Agreement, advice from Delaware counsel with respect to the need for surplus cash to effect the transactions described in the Exchange Agreement, and summarized the Information Statement to be sent to ePALS stockholders, the Merger Agreement, and the Stockholders Agreement. Discussion ensued.

The Board determined and agreed that the Company had sufficient surplus cash to effect the transactions described in the Exchange Agreement.

Mr. Ewert then provided an overview of the In2Books Disclosure Schedules to the Merger Agreement. Mr. Ewert informed the Board that the most recent versions of the Disclosure Schedules provided to the Company were outdated and would be updated prior to signing and closing and that certain other schedules to the Merger Agreement would be drafted and reviewed prior to closing. Mr. Ewert invited the Board to review the Disclosure Schedules prior to closing. Mr. Ewert then asked Bill Harrison of Silverfern to provide commentary with respect to how the exchange of shares contemplated by the Exchange Agreement would take place. Mr. Harrison stated that he had discussed the exchange mechanics with Doug Wallace from In2Books and that it was their opinion that the mechanics contained in the Merger Agreement were accurate and correct. Additional discussion regarding the documents and the Merger ensued.

Upon a motion duly made by Werner Paulus and seconded by Thomas Burchill, the resolutions attached hereto as Exhibit A were unanimously adopted and approved.

There being no further business to discuss, upon a motion to adjourn the meeting by Werner Paulus, seconded by Michael Cytrynbaum, the meeting was adjourned.

_____
Chairman