UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------X
THE SILVERFERN GROUP, INC.,           :     CIVIL ACTION NO.
                                      :     06CV15404
              Plaintiff,              :
                                      :
      v.                              :
                                      :
ePALS CLASSROOM EXCHANGE,             :
INC.,                                 :
                                      :
              Defendant.              :
---------------------------------------------------X

**PLAINTIFF'S REPLY MEMORANDUM
IN FURTHER SUPPORT OF MOTION
FOR JUDGMENT ON THE PLEADINGS
OR SUMMARY JUDGMENT, AND IN
<u>OPPOSITION TO DEFENDANT'S CROSS-MOTION</u>**

Plaintiff, The Silverfern Group, Inc. ("Silverfern"), by its undersigned counsel, respectfully submits this reply memorandum of law in further support of its motion for judgment on the pleadings or, in the alternative, summary judgment.

Defendant ePALS Classroom Exchange, Inc. ("ePALS") has, by its response to plaintiff's motion, failed to raise any genuine issue of material fact regarding its liability to Silverfern for fees under the January, 2005 agreement upon which plaintiff bases its claims for damages.

In evaluating the facts and applicable legal principles, it is important to note that the defendant herein is the successor-by-merger resulting from the transaction in respect of which Silverfern's services were retained. The November 28, 2006 Merger Agreement (annexed as Exhibit "F" to the April 9

affidavit of Thomas F. Burchill) makes clear that Silverfern's client (the "old" ePALS), was the "seller" and not the survivor of the resulting transaction. The merged entity retained the ePALS name and brand.[1]

Defendant's attempts to show that oral "complaints" were made to Silverfern about its services prior to closing the transaction (December 15, 2006) that gives rise to Silverfern's legal entitlement to its fee, are without effect here. While defendant attempts to create an issue of fact as to whether there were oral complaints about Silverfern's purported acts or omissions, pursuant to the merger partners' express agreement and under the clear and clearly applicable teaching of Lazard Freres & Co. v. Crown Sterling Management, Inc., 901 F.Supp. 133 (S.D.N.Y. 1995), the election of the merger partners to consummate their merger renders Silverfern's fee earned and payable and Silverfern entitled to summary judgment.

This memorandum is also submitted in opposition to defendant's cross-motion seeking (i) discovery pursuant to FRCP 56(f); and (ii) summary judgment determining, as a matter of law, that the indemnification provisions of Silverfern's engagement agreement do not include Silverfern's attorneys' fees and costs incurred by virtue of the breach of that agreement. ePALS' cross-motions should be denied. Defendant has neither sought discovery – despite ample opportunity to do so – nor met its burden under FRCP 56(f). And, the

---

[1] The Merger Agreement confirms that the shareholders of Silverfern's client received payment of the agreed-upon merger consideration, and that In2Books and its subsidiary, the entities "adverse" to Silverfern's client, were the "surviving" entity, albeit doing business as ePALS, the defendant herein. Section 9.1 of the Merger Agreement also confirms the agreement and understanding of all parties that Silverfern's fee would be "payable by reason of the consummation of the merger."

indemnification provision in the subject engagement agreement is unlike the provisions at issue in the cases upon which defendant's cross-motion is premised. This action is indisputably one "arising out of or related to...[the consummated merger] Transaction or Silverfern's engagement" (See Section 8 of the January, 2005 Silverfern engagement agreement, Exhibit A to Silverfern's amended Complaint (the "Agreement")). Silverfern's client agreed to indemnify it for, *inter alia*, any and all attorneys' fees and costs Silverfern might incur in respect of that transaction or engagement.

## POINT ONE

### ePAL'S OPPOSITION HAS FAILED TO RAISE ANY GENUINE DISPUTE OF MATERIAL FACT AND SILVERFERN IS ENTITLED TO SUMMARY JUDGMENT

**A.    All Parties Agreed That Silverfern's Fee Was Earned And Payable Upon Consummation Of The Transaction And The Decision To Proceed With That Transaction Constituted An Election Of Remedies And A Waiver of Any Alleged Complaints Such As Defendant Now Seeks To Assert.**

The defendant attempts to evade or delay judgment by the thinnest of ruses, claiming that, at one or more of ePALS' own board of directors meetings, there were "complaints" regarding Silverfern's performance.[2] Were they accepted as true, defendant's submissions in response to Silverfern's motion stand for the proposition(s) that:

---

[2] Defendant's submissions do not, however, include minutes of any Board meeting which reflect such complaints. Rather, the only Board minutes furnished reflect no such complaint. This is, of course, consistent with the absence of **any** documentary evidence or corroboration of any such purported complaint.

- Edmund Fish, the senior executive of the prospective merger partner In2Books (**not** Silverfern's client)[3] orally complained about an issue with the capital structure of old ePALS, a problem that Silverfern did not create and was not responsible to resolve;

- None of the multitude of sophisticated and experienced directors, investors, officers and advisors involved in the transaction – many of whom have substantial merger and acquisition experience and formal legal training – ever expressed any complaint about Silverfern's performance in writing until after Silverfern filed suit; and

- Notwithstanding the purported (oral) complaints, Silverfern's client elected to close the transaction that it and its merger partner had expressly agreed in the late November, 2006 merger agreement would entitle its investment banker [Silverfern] to be paid the negotiated and agreed-upon fee.

What cannot be, and is not, disputed is that, knowing whatever they knew or believed about Silverfern's "performance", no merger party took any action against Silverfern prior to consummating the merger or made any written complaint (nor made written reference to any complaint). Instead, the parties proceeded to the December 15 closing, electing to consummate the merger transaction – which each had agreed in their November 28 Merger Agreement would make payable Silverfern's fee. Notwithstanding the sophistication and

---

[3] Mr. Fish was never Silverfern's client. Mr. Fish's interest in avoiding the payment of a large transaction fee is obvious and renders his commentary suspect, not just irrelevant. Similarly irrelevant is the affidavit of Douglas Wallace. He, too, was an In2Books' employee and not Silverfern's client.

{00024140.}                                4

experience of the people involved in the merger transaction, and notwithstanding whatever concerns some secretly claim to have had at the time, an election was made not to terminate Silverfern's services and to close the merger transaction. In so doing, Silverfern's client made exactly the same election as did Crown Sterling in the Lazard Freres case – to waive any so-called breach or failure to perform. Exactly as in the Lazard Freres opinion, the election to close the transaction constitutes a waiver of any such breach or failure ("even if [defendant's claims] were true, **[Silverfern's client] elected to continue with the Agreement**." Lazard, 907 F.Supp. at 136. Having so elected to proceed, defendant must now be required to pay Silverfern the fee that both merger partners expressly agreed was "payable by reason of the consummation of the merger."

B.  **As Each Merger Partner Expressly Agreed, The Obligation Under The Agreement To Pay Silverfern's Fee Was Absolute And Not Contingent On Any Circumstance Or Fact Other Than Closing Of A Qualifying Transaction.**

Defendant spills plenty of ink trying to show that Silverfern did not find a merger partner fast enough; assigned the wrong people to the deal; failed to do its homework, and other transgressions. Whether these claims are real or imagined, however, matters not. The Agreement required payment of the fee upon the closing of any qualifying "Transaction" – not only if the survivor of that transaction still liked Silverfern or believed Silverfern to have added value, but when and if a "Transaction" closed. One did. Defendant owes the fee and there is no factual issue to divine or discuss. In fact, both the express terms of the merger partners' November 28, 2006 Merger Agreement (Section 9.1

thereof), as well as the April 9 declaration of defendant's former Chief Executive Officer Jonathan Ewert, submitted *by plaintiff* herewith, make clear, respectively, that under and pursuant to the Agreement pursuant to which Silverfern was retained, Silverfern's fee would be "payable upon consummation of the merger" and that "Silverfern would earn and be owed its fees (in addition to the retainer ePALS paid at and shortly after execution of that Agreement") in the event of any qualifying Sale as defined in section 2 of the Agreement."

C. **Defendant's Contention Now That "It" Orally "Complained" Prior To Closing Has No Effect On The Contractual Obligation To Pay Silverfern's Fee.**

Defendant submits affidavits designed, apparently, to try to create an "issue of fact" as to whether complaints were made to Silverfern prior to the December 15, 2006 closing. First, that is not an "issue" that could deprive Silverfern of its right to judgment here. But, even if it was, defendant's "showing", consisting of conclusory, uncorroborated, and unsubstantiated self-serving claims, falls woefully short of the mark. Defendant now says that it[4] "complained" before the December 15 closing. More specifically, defendant claims that at board of directors meetings, telephonically conducted, Silverfern personnel may have heard "complaints" voiced. Defendant asserts this, even

---

[4] Of the sworn statements submitted by defendant, only two reflect any purportedly expressed complaint or concern by Silverfern's client; other declarants or affiants either express no such complaints, or reflect the view of In2Books' management, not Silverfern's client "old ePALS". And, the two submissions from Silverfern's client express only the concerns that (i) Silverfern did not introduce In2Books as a merger candidate or properly market ePALS (see, Declaration of Timothy DiScipio); and (ii) the delayed closing "gave leverage to In2Books, which was able to renegotiate the term of the deal to the disadvantage of ePALS". (See, Declaration of Michael Cytrynbaum). Silverfern's client did not have to agree to renegotiate, but it did. That renegotiation and subsequent closing makes clear the "election to continue" which the Court in the <u>Lazard Freres</u> case found as the basis for its decision.

as it produces only minutes of a November 28, 2006 Board of Directors meeting (Declaration of McEachern at Exhibit B thereto) containing not a shred of a reference to any such complaints or claim.

Defendant's contentions are misplaced and of no effect. As both the November 28, 2006 Merger Agreement confirmed (at section 9.1), and the declaration of defendant's former Chief Executive Officer (Jonathan Ewert) makes clear, the thrust of Silverfern's Agreement, and of the Lazard Freres decision, is that, if Silverfern had committed some enormous transgression prior to closing on December 15, 2006, its client had options: it could have terminated its Agreement with Silverfern (this is the option principally discussed in the Lazard Freres decision) – but it did not. It could have notified Silverfern of the claimed breach and advised it that no fee was owed or would be paid at closing. No one did this either.[5] The one thing that Silverfern's client could not do was go through with the closing, whilst holding in abeyance, as it were, for later defensive assertion against Silverfern, the unstated claims of breach and alleged damage.[6] That is so because, as explained in Lazard, Silverfern's client's decision to proceed with the closing is treated as an election of remedies – by closing, with the Agreement still fully in force, ePALS both elected to incur the fee, and waived any claim that the fee was not owed. In the Merger Agreement, the surviving entity – defendant – accepted this election,

---

[5] Rather, as Mr. Ewert correctly observes, ePALS sought to persuade Silverfern to reduce its fee "*merely*...to reduce the costs of the transaction." Ewert April 9 declaration, ¶ 8.

[6] Again, Mr. Cytrynbaum's declaration makes clear that the "damages" defendant now claims to have suffered, resulted from In2Books' renegotiation of the deal. Silverfern's client did not have to renegotiate and its decision to do so and thereafter consummate the transaction constituted a voluntary election on its part to do so.

agreeing that Silverfern's fee would be "payable by reason of the consummation of the merger".

This result makes good law, because it prevents bad-faith, after-the-fact concoctions like the one that defendant is now trying to foist on this Court and Silverfern.

In fact, defendant's "evidence" that "complaints" were orally made – allegedly at telephonically conducted board meetings, the minutes of which defendant has elected not to submit – consists only of three sworn statements, each of which is insufficient to show any genuine issue of material fact sufficient to deprive Silverfern of summary judgment. Mr. Fish says that he "complained", but he was not Silverfern's client, he was an In2Books executive. Mr. DiScipo's "complaint", in essence, is that Silverfern was not the party that located In2Books as a merger partner. But, that is no defense at all to Silverfern's claims, which depend only on the closing which everyone acknowledges did take place. (See Lazard, 901 F.Supp. at 137-138 (investment bank's compensation was dependent on closing, not on having procured the deal or deal partner).

Finally, Mr. Cytrynbaum says he "complained" that Silverfern should have found the technical defects in the stock authorizations earlier.[7] But Mr.

---

[7] Tellingly, Mr. Cytrynbaum then admits that the delays encountered enabled In2Books to "renegotiate", a clear election by Silverfern's client, as renegotiation and closing were not mandatory. Rather, Silverfern's client could have refused to renegotiate. Its decision to renegotiate and close constitutes a clear "election" by ePALS.

It was expressly agreed by the parties that Silverfern's fee would be a liability of the surviving entity and would be "payable by reason of the consummation of the merger" (see, sections 2.17, 3.17 and 9.1 of the November 28, 2006 Merger Agreement, Exhibit F to the April 9 affidavit of

Cytrynbaum's criticism is misplaced under the very clear and express terms of Silverfern's Agreement with its client. "Section 1" of that Agreement defines Silverfern's obligations and duties and legal due diligence is not one of them. It is also obvious enough that an investment banker is not obligated to conduct legal due diligence – such as whether the shares of stock which its client has issued were duly authorized and properly issued. That is, of course, the role of lawyers and Silverfern's Agreement contains nothing that could be construed as imposing that duty on it. Rather, Silverfern agreed to "familiarize itself to the extent it deems appropriate and feasible with the business, operations, financial condition and prospects of ePALS"; there is nothing submitted which would even suggest that Silverfern did not do so. Moreover, the Agreement contains specific, exculpatory language that Silverfern's client would furnish information, and that Silverfern would "use and rely on" such information, had no responsibility "for independent verification of any information", and that "Silverfern shall be entitled to rely upon the accuracy and completeness of all such information..." (Agreement, p. 2). Moreover, as a material part of the

---

Thomas F. Burchill submitted herewith), an admission by which defendant is bound. Further, the terms of the transaction documents make it unmistakably clear that Silverfern's client (the "old" ePALS) was the selling party, not the survivor of the merger (the "new" ePALS) despite the fact that the resulting entity would retain the name "ePALS". What defendants either gloss over, do not recognize, or ask this Court to ignore is that Silverfern's client nonetheless elected to close the merger and that to the extent Silverfern's client was damaged by Silverfern's acts or omissions, the defendant – the surviving entity – benefited from those consequences to the same degree and extent. To the extent there was "damage" (because In2Books renegotiated the deal to its advantage), that "damage" would only be reflected in Silverfern's client (or its shareholders) receiving less merger consideration by reason of the "renegotiation" to which Mr. Cytrynbaum alludes. But, under the teaching of Lazard Freres, Silverfern's client elected to proceed and consummated the merger, thus waiving any claim it might have had. As all parties agreed, Silverfern's fee was "payable by reason of the consummation of the merger" and should now be paid without further delay.

Agreement, Silverfern's client "confirm[ed] that it w[ould] rely on its own counsel, accountants and other similar expert advisors for legal, accounting, tax and other similar advice". (Agreement, Section 5).[8]

### D. ePALS Acknowledged And Admitted In Writing Its Obligation To Pay Silverfern's Fee And Its Expenses.

In a carefully worded declaration, defendant attempts to have Jonathan Ewert try to back away from his December 1, 2006 written admission that ePALS owes Silverfern its fee (Holmes Ex. G). But, defendant's efforts to backtrack are of no effect; Mr. Ewert does not deny the terms of his own letter. In his more recent (April 9) declaration, made after he left defendant's employ on March 30, 2997, Mr. Ewert confirms that his letter was an effort to "persuade [Silverfern] to reduce their fees" as part of ePALS' efforts "merely...to reduce the costs of the transaction." Thus, in his letter of December 1, 2006 Mr. Ewert certified to Silverfern that his "Attachment A" was "a list of all outstanding closing costs...that ePALS [was] aware of **along with** a **corresponding list of concessions...**". The fees due are listed in the second column -- not in the column that lists the concessions, and not in the final column which listed amounts that ePALS knew it would be paying at the closing.

---

[8] Section 12 of the Agreement provides that "this Agreement constitutes the entire agreement, and supersedes all prior agreements and understandings (both written and oral) of the parties hereto with respect to the subject matter hereof...". Notwithstanding, in its opposition to plaintiff's motion, defendant now points to an earlier (September 22, 2004) letter from a predecessor of Silverfern, and tries to claim that that letter (Exhibit A to Mr. Ewert's March 26 declaration) shows that Silverfern undertook to analyze and certify the correctness of ePALS' capitalization. The September, 2004 letter constitutes no such agreement or undertaking by Silverfern, and is without effect here under the express, complete and integrated January, 2005 Agreement.

{00024140.}                           10

Mr. Ewert's suggestion in his initial declaration that he did not personally "agree on behalf of ePALS to pay" the fee, is entirely beside the point: Mr. Ewert acknowledged and admitted in his December 1 letter that Silverfern was the "party owed" (column 1 of his "Attachment A") and that the "Amount of Fees" was $550,000.00. The fact that he did not also then certify ePALS' willingness to comply with that obligation is here immaterial – he acknowledged the obligation. Mr. Ewert's new, April 9, declaration clarifies that the fee was in fact owed "upon closing".

So too, in the same December 1, 2006 letter, Mr. Ewert acknowledged the correctness of Silverfern's claim for "expense reimbursement" of $4,878. With respect to that claim, he **did** certify that it was and would be payable at the December 15, 2006 closing.

E.  **Defendant Fails To Demonstrate That Summary Judgment Should be Delayed So That It Can Take "Discovery".**

Defendant has manifestly failed to sustain its burden under FRCP 56(f) of demonstrating that it is unable, without discovery, to present proof of facts required to oppose Silverfern's motion. Indeed, there is no information that is in Silverfern's possession which is not equally available to defendant that could be at all pertinent to the motion, and defendant points to none. Defendant makes no attempt to identify any discovery which it needs in order to oppose plaintiff's motion which it has sought or been unable to obtain.[9] See Lazard

---

[9] Nothing has prevented or is preventing defendant from serving discovery requests during the long pendency of this motion. So too, Mr. Sherwood's contention that by serving discovery requests itself Silverfern has 'tacitly conceded" anything, is the merest rhetorical gesture.

Freres, 901 F.Supp. at 137 (defendant that failed to make proper showing was not entitled to discovery pursuant to Rule 56(f)).

This aspect of defendant's opposition, like the rest of its opposition, is a sham asserted merely in the hope of delaying judgment day and Silverfern's collection of the sums that defendant owes to it.[10]

## POINT TWO

### SILVERFERN'S CLIENT AGREED TO INDEMNIFY SILVERFERN FOR ATTORNEYS' FEES AND COSTS INCURRED "ARISING FROM ANY...TRANSACTION OR SILVERFERN'S ENGAGEMENT" AND DEFENDANT'S CROSS-MOTION SHOULD BE DENIED

Silverfern has expressly been indemnified and held harmless "against any and all claims...costs and expenses as incurred (including all reasonable fees and disbursements of counsel...) arising out of or related to any actual or proposed transaction or Silverfern's engagement...". This indemnification was drafted and intended to apply precisely to include situations such as this – i.e., a dispute "arising out of" and "related to" both the December 15, 2006 merger (which, defendant concedes, was a "Transaction" within the meaning of the Agreement) and "Silverfern's engagement" under the January, 2005 Agreement. The November, 2006 Merger Agreement expressly confirms that Silverfern's fee became "payable to reason of the consummation of the merger". The indemnification is both specific and unmistakably clear and its terms do not parallel those in any of the Hooper Associates, LTD. v. AGS Computers, Inc., 74 N.Y.2d 487, 549 N.Y.S.2d 365 (1989) line of cases to which defendant cites in

---

[10] Indeed, FRCP 56(g) appears to be applicable here, for defendant's affidavits and declarations appear to be asserted in bad faith and solely for the purpose of delay.

support of its cross-motion, and that line of cases is inapplicable and inapposite, *in toto*. Defendant has not cited any applicable authority to show that such unmistakably clear language (unqualifiedly covering any attorneys' fees and costs Silverfern incurs in respect of an "arising out of" either the transaction or the retainer agreement) should not apply here.

Defendant is obviously not entitled to summary judgment regarding the meaning and interpretation of the parties' agreement with respect to indemnity, as courts have correctly recognized that the ultimate determining factor in whether or not these parties so agreed, is what they intended. See, e.g., Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 199 (2d Cir. 2003). Here, the indemnity agreement is comprehensive and is not limited to fees incurred arising from claims of third parties. This Agreement was, on its face, intended to cover attorneys' fees in disputes between them – that is why the indemnity covers **all** claims "arising from" a Transaction or the Agreement.[11]

The decisions that defendant cites are not to the contrary. Each of the Hooper line of cases involved indemnification language which, by its terms, was limited in such a way to certain types of claims that it would not have been rational to find that it included claims between the contracting parties. For example, in Hooper the indemnification only covered claims arising out of breach of warranty, performance of service, patent infringement, installation of

---

[11] Silverfern believes the Agreement is clear on this point. Defendant, however, appears to contend otherwise. If the relevant provision were deemed ambiguous, then Silverfern should be permitted (and hereby requests) permission, pursuant to FRCP 56(f), to conduct depositions and other discovery regarding the contracting parties' understanding of and intentions with respect to the indemnity provisions of the Agreement.

the system, or mechanic's liens. See Hooper, 74 N.Y.2d at 490, n. 1. See also, Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc., 98 F.3d 13, 21 (2d Cir. 1996) (claims arising out of "collection activity or employee dishonesty"); Coastal Power International, Ltd. v. Transcontinental Capital Corp., 182 F.3d 163, 165 (2d Cir. 1999) (claims arising from "failure...to perform any of its representations, warranties, covenants or agreements"); Bourne Co., v. MPL Communications, Inc., 751 F.Supp. 55, 57, n.3 (S.D.N.Y. 1990) (authorizing publisher to institute or defend legal action to protect composer's rights). Defendant's reliance on Hooper and its progeny is entirely misplaced and its cross-motion should be denied.

## CONCLUSION

Silverfern's motion should be granted and defendant's cross-motion denied in all respects. Judgment should summarily and expeditiously be entered in Silverfern's favor, together with an award to Silverfern of its attorneys' fees and expenses incurred herein, together with such other and further relief as the Court may deem appropriate.

Dated:   New York, New York
         April 9, 2007

                                        TOFEL & PARTNERS, LLP

                                        By: _____
                                            Lawrence E. Tofel
                                        800 Third Avenue, 12th Floor
                                        New York, NY  10022
                                        (212) 752-0007
                                        *Attorneys for Plaintiff*

{00024140.}                    14

To:  James C. Sherwood, Esq.
     Schlam Stone & Dolan, LLP
     26 Broadway
     New York, NY  10004
     *Attorneys for Defendant*

{00024140.}                    15