UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE SILVERFERN GROUP, INC., <br><br>                                      *Plaintiff,* <br>     - against - <br><br> ePALS CLASSROOM EXCHANGE, INC., <br><br>                                       *Defendant.* | Case No. 06 CV 15404 (LBS) <br><br> **REPLY AFFIDAVIT OF JAMES C. SHERWOOD IN FURTHER SUPPORT OF DEFENDANT'S CROSS-MOTION FOR <u>DISCOVERY</u>** |

STATE OF NEW YORK    )
                              ) .ss:
COUNTY OF NEW YORK  )

        **JAMES C. SHERWOOD**, being duly sworn deposes and says:

        1.    I am a member of the Bar of this Court and I am a member of Schlam Stone & Dolan LLP, attorneys for defendant. I make this affidavit based on my own personal knowledge and submit it pursuant to Fed.R.Civ.P. 56(f) in further opposition to plaintiff's motions for judgment on the pleadings and for summary judgment and in support of defendant's motion for discovery.

        2.    Defendant has had no opportunity to take discovery due to the procedural posture of the case, largely due to tactical decisions by plaintiff. Pleadings were complete in this case on February 1, 2007; plaintiff filed its motion for judgment on the pleadings and summary judgment on February 15, 2007, only 14 days later. When this firm, appearing as defendant's new counsel, requested an extension of time to learn the case and to prepare a response to plaintiff's motions, plaintiff's counsel declined to consent.

        3.    The Federal Rules of Civil Procedure provide for a discovery conference by the parties before any discovery demands may be served. Fed. R. Civ. P. 26(d).

Custom and pragmatism dictate that document demands be served and answered, and documents be produced and reviewed by the demanding counsel, before depositions are taken so that witnesses may be examined with respect to the documents. This could not be accomplished in the 33 days from February 22, 2007 when this firm appeared for defendant to March 27, 2007 when defendant's responsive papers were due.

4. There exist material facts which defendant cannot now present in opposition to this summary judgment motion due to lack of opportunity for discovery. In this paragraph, I set forth the facts defendant intends to assert in opposition to plaintiff's motion, why it is material, and what disclosure is needed to obtain evidence to prove it.

> (a) **FACT:** Silverfern understood that in agreeing in the January 4, 2005 Letter Agreement with ePALS (the "Letter Agreement") to "familiarize itself to the extent it deems appropriate and feasible with the business, operations, financial conditions and prospects of ePALS," it agreed to learn the capitalization structure of ePALS.
>
> **MATERIALITY:** The above-quoted language from Section 1(a) of the Letter Agreement is general and vague as to precisely what is required of Silverfern. The September 22, 2004 letter from Clive Holmes, an inducement to ePALS retaining Holmes, states that such a familiarization with the capitalization structure is standard operating procedure for Silverfern (then called Kiwi). (*See* Declaration of Jonathan Ewert dated March 27, 2007, Ex. A [Doc. No. 26].) In its papers, Silverfern denies any obligation with respect to capitalization.

2

    **DISCLOSURE NEEDED**: Document discovery of Silverfern including drafts, internal communications, memos, and timesheets. Deposition of Clive Holmes, who drafted the 9/22/04 Letter and worked on the Letter Agreement; Tom Burchill, who introduced Silverfern to ePALS, and Bill Harrison, who was the principal Silverfern employee who worked on this matter and who sent ePALS "Due Diligence Document Requests" seeking documents relevant to capitalization issues. (*See* Declaration of Victoria McEachern dated March 27, 2007, Ex. A [Doc. No. 28]). Jonathan Ewert, who was involved in negotiating the Letter Agreement for ePALS must also be deposed. His employment by ePALS terminated at the end of March, after which he submitted an affidavit in this case at Silverfern's request, and so he is not a witness under ePALS' control.

(b)   **FACT**: Silverfern understood that its right to payment of $550,000 upon closing was not absolute, but was intended to reflect the value of its contribution to a major corporate objective of its client.

    **MATERIALITY**: Plaintiff relies on *Lazard Frères & Co. v. Crown Sterling Mgmt., Inc.*, 901 F. Supp. 133 (S.D.N.Y. 1995) for the proposition that it is entitled to $550,000 upon closing regardless of whether it helped, impeded or damaged its client. In that case, the parties' contract explicitly provided that if a

qualifying event occurs, Lazard must be paid regardless of whether it brought about the event. In the present case, there is no such language; the contract here at issue provides that "Our fees. . . are designed to reflect our contribution to a major corporate objective." Letter Agreement, Section 2. While Silverfern now tries to read this language out of the contract, there was apparently concern at Silverfern on this point: I have been informed that Bill Harrison sought reassurance on several occasions in the second half of 2006 as to whether Silverfern would be paid its full $550,000 on closing.

**DISCOVERY NEEDED**: Document discovery of drafts of this contract, of internal and external communications at Silverfern, and of other Silverfern contracts for similar services; depositions of Holmes and Ewert, who worked in drafting the contract; Harrison, Ewert, Ledwith and others who may have discussed whether Silverfern would be paid at closing, and in what amount.

(c)  **FACT**: Silverfern knew of ePALS' capitalization problem and failed to bring it to ePALS' attention.

**MATERIALITY**: On Silverfern's website, it lists three equity financings which its bankers managed for ePALS, in 2002, 2003 and 2004, stating that "The following Transactions have been completed by The Silverfern Group's Professionals." A true copy

4

of the relevant portion of Silverfern's website[1] is annexed hereto as Exhibit A. Since Silverfern was not retained by ePALS until January, 2005, the Silverfern banker who arranged these financings could only be Tom Burchill, who was a director of ePALS from 2002 to 2006, and who joined Silverfern in 2005 (Burchill Aff., ¶¶ 1-2). If Burchill arranged those financings, he would almost certainly have knowledge of the capital structure problems, and that knowledge would be imputed to Silverfern during the period Burchill served as a member of Silverfern and a director of ePALS. If Silverfern knew of this problem well before the November 1, 2006 initial closing date and failed to reveal it to ePALS' management, it was grossly derelict in its obligations of due care and good faith and fair dealings, and the contract payment should be reduced by the damages suffered by ePALS due to its gross negligence. *See* Letter Agreement, Section 7.

**DISCOVERY NEEDED**: Document discovery of communications in connection with Silverfern's hiring Burchill and relating to the foregoing entries on its website, and relating to Burchill's, Harrison's, and/or Silverfern's knowledge of the capital structure problems; depositions of Holmes, Burchill and Harrison concerning the same topics.

(d)   **FACT**:   Silverfern knew before the Closing that ePALS had

---

[1] www.silfern.com/transactions/CorpFinTransactionsAug2006.pdf (last visited April 13, 2007).

complained of its poor performance.

**MATERIALITY**: Under governing legal authority and Section 7 of the Letter Agreement, if ePALS complained to Silverfern of its poor performance before the Closing, it could sue Silverfern for its damages after Closing even if it did not terminate the contract. While Holmes denied that anyone ever timely objected to Silverfern's performance, and Burchill denied ever hearing criticism in ePALS' Board meetings, Harrison, who was responsible for the ePALS account at Silverfern, submitted no evidence on this motion.

**DISCOVERY NEEDED**: Documents concerning capitalization structure, time records of Silverfern personnel, internal and external communications by Silverfern personnel; depositions of Holmes, Burchill, Harrison and Ewert.

(e) **FACT**: Silverfern knew that the phrase "by reason of Closing" in paragraph 9.1 of the Merger Agreement between I2B and ePALS dated November 28, 2006 (the "Merger Agreement") was neither an interpretation of the Letter Agreement nor an admission by defendant that $550,000 was due to Silverfern at Closing.

**MATERIALITY**: In its reply papers, Silverfern characterizes a phrase in the definitions section of the Merger Agreement (Ex. C to Burchill Aff.) between ePALS and I2B as an admission of ePALS that $550,000 was owed to Silverfern at Closing regardless

6

of its performance. In fact, Silverfern is not a party to the Merger Agreement, and paragraph 9.13 of the Merger Agreement explicitly forbids using anything in the Merger Agreement to benefit or create any right for any third party. *Id.* Bill Harrison, who participated in the negotiation of the Merger Agreement, certainly knew that the phrase was not to be used to Silverfern's advantage.

**DISCOVERY NEEDED**: Document discovery of drafts of the Merger Agreement and internal and external memos and communications of Silverfern relating to the Merger Agreement; deposition of Harrison.

5.  In sum, plaintiff asked this Court to enter judgment against ePALS for $550,000 based on the Letter Agreement without permitting discovery. Critical information concerning the meaning of key terms of the Letter Agreement is outside defendant's control – Ewert left ePALS effective March 30, 2007, and others with knowledge are all employed by Silverfern. It would be grossly unfair to ePALS if judgment were entered against it without the opportunity to depose individuals with knowledge of the negotiation of the Letter Agreement and of the performance of Silverfern thereunder.

6.  For the foregoing reasons, the Court should deny plaintiff's motion for summary judgment and judgment on the pleadings and grant ePALS' motion for full discovery.

                                                                  */s/ James C. Sherwood*
                                                                  JAMES C. SHERWOOD

Sworn to before me this 13th
day of April 2007

_____
Notary Public

BENNETTE D. KRAMER
Notary Public, State of New York
No. 24-4761483
Qualified in Kings County
Commission Expires March 30, 20_10_

# Exhibit A

Case 1:06-cv-15404-LBS-DCF    Document 36    Filed 04/13/2007    Page 9 of 11

# THE SILVERFERN GROUP, INC.

NEW YORK · SAN FRANCISCO

**Selected Transaction Summary**[1]

Member NASD

## ADVISORY AND CORPORATE FINANCE TRANSACTIONS [2]

The following Transactions have been completed by The Silverfern Group's Professionals    (Our clients shown in bold)

[1] Includes Publicly Disclosable Transactions only

| Date | Acquiror | Acquiree | Transaction Value ($MM) | Transaction Type |
|---|---|---|---|---|
| Nov. 2005 | The Gap | N/A | $3,200.0 | Snr. Facilities Senior Sub. Notes / IR Hedge |
| Jun. 2005 | Groceryworks | N/A | $50.0 | Preferred Stock |
| May 2005 | Master Replicas | N/A | $2.8 | Preferred Stock |
| Mar. 2005 | Fleming Cos. | N/A | $550.0 | Snr. Facilities Senior Sub. Notes / IR Hedge |
| Jan. 2005 | Levis Strauss | N/A | $1,500.0 | Snr. Facilities Senior Sub. Notes / IR Hedge |
| 2004 | ePALS Classroom Exchange | N/A | $3.0 | Preferred Stock |
| Oct. 2003 | Parthenon Capital | Atkins Nutritionals, Inc. | Undisclosed | Strategic Advisory |
| Mar. 2003 | EARTH (Canada) Corporation | N/A | C$4.5 | PIPE with Warrants |
| 2003 | ePALS Classroom Exchange | N/A | $2.0 | Preferred Stock |
| Dec. 2002 | EARTH (Canada) Corporation | N/A | C$0.5 | Bridge Financing |
| Sep. 2002 | AOL/AT&T | N/A | $3,600.0 | Partnership Dissolution Appraisal |
| Sep. 2002 | Broadwing | N/A | $3,000.0 | Restructuring |
| Aug. 2002 | Spectrasite | Welsh, Carson, Anderson & Stowe | $350.0 | Restructuring/ Investment |
| May 2002 | FdG Associates | Dentaquest Ventures | $12.0 | Private Placement - Conv. Pref. Stock |

[2] Does not include Buy-Side or Sell-Side Transactions

**THE SILVERFERN GROUP, INC.**

NEW YORK · SAN FRANCISCO

Selected Transaction Summary

MEMBER NASD

## ADVISORY AND CORPORATE FINANCE TRANSACTIONS [2]

The following Transactions have been completed by The Silverfern Group's Professionals   (Our clients shown in bold)
(1) Includes Publicly Disclosable Transactions only

| Date | Acquiror | Acquiree | Transaction Value ($MM) | Transaction Type |
|---|---|---|---|---|
| Apr. 2002 | Discovery Communications | N/A | Undisclosed | Fairness Opinion |
| 2002 | Verticore Technologies, Inc. | N/A | $1.0 | Preferred Stock |
| 2002 | MechVisual Inc. | N/A | $1.0 | Preferred Stock |
| 2002 | ePALS Classroom Exchange | N/A | $2.5 | Preferred Stock |
| Oct. 2001 | El Paso Energy Partners L.P. | Deepwater Holdings LLC | $85.0 | Fairness Opinion |
| Sep. 2001 | Standex International Corp. | N/A | Undisclosed | Strategic Realignment |
| Feb. 2001 | ITC Deltacom | Undisclosed | $150.0 | Private Equity |
| 2001 | Denbury Resources Inc. (TPG) | N/A | $75.0 | Senior Sub. Notes |
| 2001 | Equistar Inc. | N/A | $700.0 | Senior Notes |
| 2001 | Millenium Chemicals Inc. | N/A | $275.0 | Senior Notes |
| 2001 | MacDermid Inc. (CVC) | N/A | $300.0 | Senior Sub. Notes |
| 2001 | AES Corporation | N/A | $200.0 | Senior Notes ROARS |
|  |  |  | $400.0 | Senior Notes |
| 2001 | Lone Star Technologies | N/A | $150.0 | Senior Sub. Notes |
| 2001 | Amerigas Partners LP | N/A | $60.0 | Senior Notes |
| Dec. 2000 | Globe Metallurgical, Inc. | N/A | Undisclosed | Restructuring |
| Nov. 2000 | TECO Power Services | Panda Energy International, Inc. | $2,300.0 | Joint Venture |
| Sep. 2000 | Amazon.com | N/A | € 390.0 | Currency and Int. Rate Hedges |

(1) Does not include Buy-Side or Sell-Side Transactions